PIENING, APPELLEE, v. TITUS, INC., APPELLANT.*

(No. 573—Decided December 2, 1960.)

Messrs. Durfey, Martin, Browne & Hull, Mr. Louis J. Warm and Mr. George R. Bridgman, for appellee.

Mr. William E. Bailey, for appellant.

*Motion to certify the record overruled, June 7, 1961.

*Per Curiam.* The notice of appeal lists this as an appeal on questions of law and fact taken by defendant, appellant herein, from a judgment for plaintiff, appellee herein, in the sum of $12,500 damages and interest for breach of contract to purchase plaintiff's 25 shares of stock in defendant corporation at an agreed price of $500 per share.

The case was tried by the court, the parties having waived a jury. However, it is not such a case as may be appealed on questions of law and fact. Section 2501.02, Revised Code. A bill of exceptions was prepared and filed and defendant makes several assignments of error. Hence, the appeal has been treated by counsel as one on questions of law. It will be reduced to such and will be so considered.

At a special meeting of the shareholders of defendant corporation on March 8, 1957, a resolution was passed to change the purposes of the corporation. Plaintiff dissented from this action.

Plaintiff thereupon began proceedings to obtain the fair cash value of her shares according to the provisions of Sections 1701.74 and 1701.85, Revised Code. Defendant denies her right to do so. It points out the power of the corporation as stated in its articles to make such change, and contends that plaintiff as a shareholder is bound by that provision and cannot now object.

Plaintiff claims that after her demand for the fair cash value of her shares, made in accordance with Section 1701.85, Revised Code, the defendant offered to purchase her stock for $500 per share, which offer she promptly accepted. She then brought this action for breach of such alleged contract.

Defendant denies the existence of a contract. It contends that plaintiff in seeking any relief must depend exclusively on the provisions of the statutes (Sections 1701.74 and 1701.85, Revised Code), and that these statutes do not apply to her for the reason stated above.

The communications between the parties which gave rise to this litigation were carried on by correspondence. On March 11, 1957, plaintiff wrote to defendant:

"At the special meeting of shareholders of Beverage Sales, Inc., held on Friday, March 8, 1957, the purposes for which the

corporation is organized to do business were substantially changed. At said meeting, I voted against such changes. This is to notify you that I herewith exercise my rights as a dissenter as provided in Sections 1701.74 (c) (1), and 1701.85 of the Revised Code of Ohio.

"1. My name is Frances E. Stuhlreyer, also known as Frances Piening.

"2. My address is 2604 Melrose Avenue, Norwood, Ohio.

"3. I own and hold twenty five (shares) of the common stock of Beverage Sales, Inc., and held and owned said shares prior to and on the date of the above mentioned meeting, and since said meeting.

"4. The fair cash value of said shares, in my opinion, is seven hundred dollars ($700) per share for which I herewith make demand."

On March 21, 1957, defendant responded:

"Your letter dated March 11, 1957 incorporating your demand that this corporation pay you the sum of $700 per share for twenty five (25) shares of the common stock of Beverage Sales, Inc., owned by you has been received and your demand is hereby rejected.

"While the corporation is of the opinion that no situation exists wherein your right to demand fair cash value of your shares is authorized by the statutes of Ohio, yet in order to comply with the provision of such statutes the corporation hereby offers to pay you the sum of five hundred dollars ($500) per share for the 25 shares of common stock which you now hold."

The testimony shows that this letter was written by James M. Gorman, counsel for the corporation, and signed by Morey Whalen, vice-president, director and shareholder. There is conflict in the testimony as to whether Morton S. Titus, president, director and owner of approximately 80 per cent of the stock outstanding, authorized or knew about the contents of this letter.

There was but one other director, Darlington Hicks, Titus' daughter; she was not a shareholder. Plaintiff was the only shareholder besides Titus and Whalen.

On March 25, 1957, plaintiff wrote the following letter to defendant:

"In answer to your letter of March 21, 1957, your offer of five hundred dollars ($500) per share for my twenty five (25) shares of common of Beverage Sales, Inc., is accepted.

"Please forward your draft for $12,500 to Provident Savings Bank & Trust Company, 1506 Vine Street, Cincinnati, Ohio. My certificate for twenty five shares will be there properly indorsed for you to pick up when your draft is presented."

Plaintiff does not assert rights as a dissenting shareholder. She bases her cause of action entirely upon breach of contract. The principal question before us, therefore, is whether there was a contract existing between the parties whereby defendant agreed to purchase plaintiff's 25 shares of stock at $500 per share. The answer must depend in large part upon the correct interpretation of the above correspondence, especially of defendant's letter to plaintiff of March 21, 1957.

Plaintiff, by her letter of March 11 invoked the statutory rights of a dissenting shareholder, looking to the fixing of the fair cash value of her shares as provided by Section 1701.85, Revised Code. This section is sometimes appropriately referred to as the "appraisal statute." See 13 Ohio Jurisprudence (2d), 302, Corporations, Section 833.

Defendant's response of March 21 did not reject merely plaintiff's suggestion of $700 per share as the fair cash value of her stock, but rejected her very demand itself, and denied altogether her right to make such demand. This letter did not state the corporation's idea of a fair cash value, as the statute (Section 1701.85, Revised Code) requires. It concluded with an offer to purchase plaintiff's 25 shares for $500 per share.

This offer was made, the letter says, "in order to comply with the provisions of such statutes," although the letter denied that the statutes apply.

If the language just quoted was ambiguous, it was the province of the trial court to resolve the ambiguity in the light of the evidence. He found that this letter did constitute an offer, or a counteroffer, to purchase plaintiff's shares, and that plaintiff promptly accepted the offer, giving rise to a valid contract. Such interpretation and finding being reasonable and properly supported by the record, it would be improper for us to set them aside.

Had plaintiff been an ordinary shareholder who had not dissented from any action of the corporation, we apprehend there would be no question of her right to contract for the sale of her shares, or of the corporation's right freely to contract to purchase them. Such action by the corporation is authorized by section six of the articles, as well as by Section 1701.35, Revised Code.

When plaintiff states her ideas of the fair cash value of her shares according to the proceeding outlined by Section 1701.85, Revised Code, and the corporation rejects her demand, neither party has done anything to disqualify herself or itself from making a voluntary agreement.

It was argued that there had never been a meeting of the directors authorizing the offer leading to the alleged contract. Whether lack of a formal meeting and action by the board is prerequisite to a valid contract will depend upon the circumstances.

The corporate record is quite sketchy. For example, we were able to determine the number and identity of the directors only from the stipulation contained in the bill of exceptions. It is indicated by the evidence that Titus was the dominant and controlling officer, shareholder and director. The evidence is conflicting as to whether he knew of or authorized the making of the offer of March 21, 1957, to purchase plaintiff's stock. There is sufficient evidence to support a finding that he did. It appears, partly from the testimony of Titus himself, that a great many matters were left to the decision of Gorman, counsel for the corporation, and that this was especially true around the time with which we are concerned, when Titus then had illness in his family.

Gorman drafted and dictated the offer to purchase, and Whalen, vice-president and director, signed it. Gorman testified that Titus had specifically authorized the offer.

So far as corporate formalities are concerned there was ample evidence to justify the trial court in finding that the directors and all the shareholders (see Section 1701.35, Revised Code) authorized or approved the purchase.

The requirement that binding action must be taken at a formal meeting of directors is no longer as rigid as was once

the case. Section 1701.54, Revised Code; 12 Ohio Jurisprudence (2d), 560 and 563, Corporations, Sections 449 and 450.

A corporation, like an individual, may find itself bound by action within the apparent authority of its agent. 12 Ohio Jurisprudence (2d), 508, Corporations, Section 404. Formal corporate action at an actual meeting of the board of directors ought not to be invoked in behalf of the defendant corporation which practiced the informality, to defeat plaintiff's recovery on the contract.

The court's finding that a valid contract was entered into between the parties is adequately supported by the record.

Defendant contends that the court erred in excluding Whalen from the courtroom while Titus testified. An order of separation of witnesses had been made at the outset of the trial upon request of plaintiff. Upon plaintiff's further request Whalen was temporarily excluded while Titus testified.

Such matters rest in the sound discretion of the court, and we find no abuse of discretion in these orders of exclusion.

Defendant contends further that it was error to permit plaintiff to examine Gorman, counsel for the corporation, upon the question of whether Titus authorized the offer to purchase. Clearly the letter containing the offer was not privileged, as it was mailed to plaintiff. Neither is Whalen's signature thereon nor the dictation initials of Gorman. There was no objection to Titus' general comments about leaving many decisions to Gorman. The full significance of the published letter, which was already in evidence, could not be concealed under the cloak of privilege. Titus' assent to the letter, if he did assent, is a fact relevant to the published letter rather than a confidential communication intended to be confidential.

Defendant objects to the allowance of interest at six per cent per annum on the amount of damages for breach of contract from March 25, 1957. In support of this objection it reverts again to the statutes pertaining to dissenting shareholders, which cannot determine the question in this action for breach of contract.

Plaintiff alleged and the evidence tends to establish that from March 25, 1957, defendant failed and refused to perform its contract. Hence the allowance appears proper. See 16 Ohio

Jurisprudence (2d), 229, Damages, Section 95; Section 1309.03, Revised Code; *Lawrence Rd. Co.* v. *Cobb*, 35 Ohio St., 94.

No error prejudicial to the defendant appearing in the record, the judgment will be affirmed.

*Judgment affirmed.*

WISEMAN, P. J., CRAWFORD and KERNS, JJ., concur.