GENESIS RESPIRATORY SERVICES, INC., Appellee,

v.

HALL, Appellant.

[Cite as *Genesis Respiratory Services, Inc. v. Hall* (1994), 99 Ohio App.3d 23.]

Court of Appeals of Ohio,
Scioto County.

No. 93 CA 2170.

Decided Dec. 6, 1994.

*Dinsmore & Shohl* and *Mark A. VanderLaan;* and *Ronald E. McKenzie,* for appellee.

*Stephen C. Rodeheffer,* for appellant.

PETER B. ABELE, Judge.

This is an appeal from a judgment entered by the Scioto County Common Pleas Court finding for Genesis Respiratory Services, Inc., plaintiff-appellee, and awarding the appellee corporation damages in the amount of $123,878 for excess rent, salary, and expenses that R. Terry Hall, defendant-appellant, paid to himself and others while he was a stockholder and employee of appellee corporation.

Appellant assigns the following errors:

First Assignment of Error:

"The trial court committed error in determining that appellant and Genesis had an enforceable lease agreement and in determining that there was an overpayment of rent predicated on that agreement."

Second Assignment of Error:

"The trial court erred in determining that formal board approval was required for changes in the appellant's rentals and salary."

Third Assignment of Error:

"The trial court committed error in allowing into evidence certain hearsay evidence in the form of Exhibit 6."

In 1986, appellant was the owner and sole stockholder of appellee, a Portsmouth business engaged in the rental and sale of durable medical equipment. In the fall of 1986, appellant told Mike DeLaney, his accountant, that he was interested in selling the business. DeLaney introduced appellant to E.B. Lowman II, who had expressed an interest to DeLaney, also Lowman's accountant, in purchasing such a business. Lowman and appellant, along with DeLaney and Ken Williams, Lowman's business attorney, commenced negotiations for the sale.

The four men formed Queen Health Care, Inc. ("Queen"), a holding corporation. Appellant and Lowman each owned forty-five percent of the corporation's shares, and the accountant DeLaney and the attorney Williams each received five percent of the shares in exchange for their professional services in the matter. Queen purchased appellee corporation from appellant in a series of three agreements as follows: (1) a stock redemption agreement between appellant, appellee corporation, and Lowman; (2) a stock purchase agreement between Queen and Hall; and (3) a stock purchase agreement between Queen and Lowman.

The stock redemption agreement between appellant, appellee, and Lowman provided in pertinent part as follows:

"(b) As additional consideration for this transaction, the corporation further agrees that it will enter into a lease of that certain real estate and the improvements thereon owned by HALL, located on 2nd Street, in Portsmouth, Ohio, at a rental rate of $1,000.00 per month. The parties acknowledge that a more definitive lease agreement is envisioned by the parties and the parties agree to negotiate in good faith to consummate said lease agreement within thirty (30) days from and after the date herewith."

The parties did not write a more definite lease agreement covering appellant's Second Street property.

After the execution of the three agreements, the four men became officers and directors of both corporations. They appointed appellant president and manager of operations of appellee at an annual salary of $65,000. Appellee's board decided to rent appellant's Second Street property.

During the time between the closing of the sale and the end of 1989, appellant increased his $65,000 annual salary to approximately $84,000 and increased the $1,000 monthly rent that appellee corporation paid appellant for the Second

Street property to $2,900. Appellant did not seek approval from appellee's board before paying himself the increased salary and rent. Towards the end of 1989, Lowman, DeLaney, and Williams became aware of the increases and, at a board meeting, asked appellant to reduce his salary. Appellant walked out of the meeting. In a March 1990 special meeting, appellee's board removed appellant from his position as president and general manager and appointed Lowman as acting president.

On May 24, 1990, appellee filed a complaint in the Scioto County Common Pleas Court alleging that appellant breached his employment contract and breached his fiduciary duty to the corporation. The court held a bench trial on July 13 and 14, 1993. On September 1, 1993, the court entered judgment finding in favor of appellee. The court awarded appellee $17,794 for the excess rent, $41,850 for the excess salary, $17,794 for excess payments appellant made for the benefit of himself or other businesses he owned, and $25,034 for excess miscellaneous expenses.

Appellant filed a timely notice of appeal.

## I

In his first assignment of error, appellant asserts that (1) the stock redemption agreement containing the amount of monthly rent does not constitute an enforceable lease agreement, and (2) without an enforceable agreement, the court must determine a reasonable rental value for rent of the premises.

■ Initially, we note that when reviewing evidence presented at trial, an appellate court must not reweigh the evidence. In *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578, syllabus, the Ohio Supreme Court held:

"Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." See, also, *Vogel v. Wells* (1991), 57 Ohio St.3d 91, 566 N.E.2d 154; *Ross v. Ross* (1980), 64 Ohio St.2d 203, 18 O.O.3d 414, 414 N.E.2d 426.

An appellate court should not substitute its judgment for that of the trial court when there exists competent, credible evidence going to all the essential elements of the case. In *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 10 OBR 408, 410, 461 N.E.2d 1273, 1276, the court wrote:

"The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony."

■ In the case *sub judice*, we agree with appellant that the stock redemption agreement between appellant, appellee, and Lowman does not constitute a valid lease. The stock redemption agreement clearly stated that the parties anticipated that they would negotiate a definitive lease agreement within thirty days from the date of the stock redemption agreement.

■ We find, however, that the record contains sufficient competent, credible evidence to support a finding that the parties agreed that appellee would pay appellant $1,000 per month rent for appellant's Second Street property. The stock redemption agreement, although not a lease by itself, constitutes evidence that the parties agreed to the $1,000 per month rental rate. No written agreement exists to the contrary. Appellee's board did not approve an increase in rent. Appellant unilaterally, without permission from appellee, raised the rent that he paid himself for the Second Street property from $1,000 per month to $2,900 per month.

■ Appellant argues that because only one person witnessed the signatures to the stock redemption agreement, the stock redemption agreement violates the R.C. 5301.01 statute of conveyances and thus is unenforceable.[1] First, as we discussed above, the stock redemption agreement was not a lease between the parties. Second, we note that any lease with a term of less than three years is exempt from the requirements of R.C. 5301.01. R.C. 5301.08; *Lithograph Bldg. Co. v. Watt* (1917), 96 Ohio St. 74, 117 N.E. 25. The record in the case *sub judice* contains no evidence that the parties agreed that appellee would rent the Second Street property from appellant for any specific period of time. Thus, R.C. 5301.01 did not require the agreement between the parties to be in writing and signed by two witnesses.

Accordingly, based upon the foregoing reasons, we overrule appellant's first assignment of error.

## II

In his second assignment of error, appellant asserts that the trial court erred in determining that any changes in the Second Street property rental rate or

---

1. R.C. 5301.01 provides in pertinent part:
"A deed, mortgage, land contract * * *, or lease of any interest in real property must be signed by the grantor, mortgagor, vendor, or lessor, and *such signing must be acknowledged by the grantor, mortgagor, vendor, or lessor in the presence of two witnesses*, who shall attest the signing and subscribe their names to the attestation. Such signing must be acknowledged by the grantor, mortgagor, vendor, or lessor before a judge of a court of record in this state or a clerk thereof, a county auditor, county engineer, notary public, mayor, or county court judge, who shall certify the acknowledgment and subscribe his name to the certificate of such acknowledgment." (Emphasis added.)

appellant's salary required formal board approval. Appellant argues that a board of directors need not approve of an officer's action to bind the corporation. Appellant further argues that because appellee reaped the benefits of appellant's actions concerning the increased rent and salary and because appellee did not repudiate those actions, appellee is estopped from voiding the actions. Appellee contends that appellant, as an officer and director of appellee, had a fiduciary duty to fully disclose any contracts or modifications of contracts between himself and appellee.

R.C. 1701.59(B) requires that corporate directors perform their duties in good faith. The statute provides as follows:

"A director shall perform his duties as a director, including his duties as a member of any committee of the directors upon which he may serve, in good faith, in a manner he reasonably believes to be in or not opposed to the best interests of the corporation, and with the care that an ordinary prudent person in a like position would use under similar circumstances. * * *"

In *Wing Leasing, Inc. v. M & B Aviation, Inc.* (1988), 44 Ohio App.3d 178, 181, 542 N.E.2d 671, 676, the court elaborated on the statute and the fiduciary duty of corporate directors as follows:

"It is well-established that a corporate officer occupies a position of trust in relation to his corporation. *Thomas v. Matthews* (1916), 94 Ohio St. 32, 43, 113 N.E. 669, 671. Such relationship imposes upon directors duties in the nature of a fiduciary obligation. *Id.;* see, also, *Radol v. Thomas* (C.A. 6, 1985), 772 F.2d 244, certiorari denied (1986), 477 U.S. 903 [106 S.Ct. 3272, 91 L.Ed.2d 562]. The principles which govern the fiduciary relationship between a corporation and its directors include a duty of good faith, a duty of loyalty, a duty to refrain from self-dealing and a duty of disclosure. R.C. 1701.59(B) and 1701.60(A)(1); see, also, *Apicella v. PAF Corp.* (1984), 17 Ohio App.3d 245, 247, 17 OBR 512, 515, 479 N.E.2d 315, 318 (duty of good faith); *Radol, supra,* at 256 (duty of loyalty); *Bohannon v. Taylor* (1936), 52 Ohio App. 564, 570–573, 6 O.O. 482, 484–485, 4 N.E.2d 164, 166–167 (prohibition against self-dealing); *Nienaber v. Katz* (1942), 69 Ohio App. 153, 158–161, 23 O.O. 578, 580–581, 43 N.E.2d 322, 325–326, and *Kellogg–Mackay Co. v. O'Neal* (1931), 39 Ohio App. 372, 387, 177 N.E. 778, 783 (duty of disclosure).

" * * * [B]ecause close corporation directors are frequently the corporate stockholders as well, courts also tend to impose a stringent fiduciary standard on such directors. See, generally, 1 O'Neal & Thompson, O'Neal's Close Corp. (3 Ed.Cum.Supp.1987) 31–32, Section 1.20 (collecting cases)." See, also, *Prodan v. Hemeyer* (1992), 80 Ohio App.3d 735, 740, 610 N.E.2d 600, 604; *Geygan v. Queen City Grain Co.* (1991), 71 Ohio App.3d 185, 191, 593 N.E.2d 328, 331; *Estate of*

*Morad v. Task* (Mar. 10, 1994), Cuyahoga App. No. 64757, unreported 1994 WL 78157.

To recover from a corporate director for breach of fiduciary duty, a corporation does not need to prove the director acted with fraudulent intent; the corporation need only prove by clear and convincing evidence that the director had conflicting loyalties and, in light of those conflicting loyalties, the director violated a fiduciary duty owed to the corporation. See R.C. 1701.59(C)(1); *Prodan; Ohio Drill & Tool Co. v. Johnson* (C.A. 6, 1980), 625 F.2d 738, 742 (interpreting Ohio law). Courts will hold corporate directors strictly liable for any waste or mismanagement of corporate funds they cause. *Estate of Morad* at 9–10, citing *Apicella v. PAF Corp.* (1984), 17 Ohio App.3d 245, 17 OBR 512, 479 N.E.2d 315.

In the case *sub judice*, there is sufficient competent, credible evidence supporting the court's finding that appellant violated his fiduciary duty to appellee. He unilaterally raised his salary and the rent he paid himself for the Second Street property without consulting the other members of appellee's board. Lowman testified that because the company was having financial troubles, at a board meeting he suggested to appellant that they both decrease their salaries temporarily. At the time, Lowman believed appellant's salary was $65,000. Appellant refused the suggestion to decrease his salary and did not disclose that he had raised his salary and the rent for the Second Street property. We find that in light of appellee's poor financial condition and in light of the circumstances of that particular board meeting, appellant's fiduciary duty toward appellee required him to disclose the fact he had raised his own salary and had raised the rent appellee was paying him. See *Estate of Morad, supra.*

Because appellant breached his fiduciary duty to appellee in these respects, appellant is liable for any profits he received as a result. *Ohio Drill & Tool Co., supra.* The trial court awarded appellee the amount of money paid to appellant for salary and rent in excess of the agreed amounts. Because appellant raised his salary and the rent payments without the board approval, this excess represents the profit he made by self-dealing. Thus, the trial court did not abuse its discretion in awarding this amount.

Appellant cites *Campbell v. Hospitality Motor Inns, Inc.* (1986), 24 Ohio St.3d 54, 24 OBR 135, 493 N.E.2d 239, and *Piening v. Titus, Inc.* (1960), 113 Ohio App. 532, 18 O.O.2d 174, 179 N.E.2d 374, in support of his argument that the board of directors does not need to approve of corporate actions for the action to bind the corporation. These cases are inapplicable to the case at bar for several reasons. First, both *Campbell* and *Piening* hold:

"[A]n unauthorized contract entered into by a corporate officer or agent may be impliedly ratified by the corporate board of directors where the directors have

actual knowledge of the facts and (1) accept and retain the benefits of the contract, (2) acquiesce in it, or (3) fail to repudiate the contract within a reasonable period of time." *Campbell,* 24 Ohio St.3d at 57, 24 OBR at 138, 493 N.E.2d at 242.

In the case *sub judice,* there is sufficient competent, credible evidence to support the court's finding that appellee's board members other than appellant were *not* aware of the fact appellant raised his salary and raised the rent he received for the Second Street property. Once the other board members became aware of the raises, they took action demonstrating their repudiation of the raises.

Appellant cites *London & Lancashire Indemn. Co. of Am. v. Fairbanks Steam Shovel Co.* (1925), 112 Ohio St. 136, 147 N.E. 329, for the proposition that because appellee benefitted from the services provided in exchange for the salary and the rent, and because appellee did not repudiate the raises within a reasonable time, appellee must be estopped from recovering the increases. We note that *London & Lancashire* did not involve a self-dealing director. We further note that the directors in *London & Lancashire* had knowledge of the disputed contract and therefore impliedly approved of it. See *Campbell; Piening.* Additionally, we note that appellee did not receive any increased benefit from the increased salary and rent. Appellee received the same services from appellant and the same use of the Second Street property both before and after the salary and rent increases.

Accordingly, based upon the foregoing reasons, we overrule appellant's second assignment of error.

### III

In his third assignment of error, appellant asserts that appellee's exhibit number six, a summary of unauthorized expenses that appellant paid from appellee's funds, is inadmissible hearsay and thus the court erred by admitting the exhibit. In reply, appellee argues that (1) the exhibit is admissible under the business records exception to the hearsay rule, Evid.R. 803(6) and 1006, and (2) if the exhibit was erroneously admitted, the admission is harmless error.

■ We note that although appellant raised a hearsay objection to the testimony regarding the exhibit, appellant failed to object to the admission of the exhibit itself. Appellant's counsel stated in pertinent part as follows:

" * * * I have no objection to Mr. Williams testifying to, about and identifying any particular business records he may have that have been reduced to an exhibit. I am going to object at this time under the guise that he has 'conducted

an investigation' to him testifying to matters that are matters that he has learned in interviewing people outside his review of the business records.

"* * *

"And my objection is, as the Court already knows, is not that he is going to go through and identify these checks, but that the Court will note when it gets to the exhibit, which I presume that you're going to let in, that has the payee, he has the check number, he has the date and he has what is essentially a three or four word explanation. It is my contention that the only way the explanation could be generated is by talking to the payee of the check and learning what the check was for."

We note that during the course of the trial, appellant's counsel specifically stated, "I have no objection to 35, 6 and 7." By failing to object to the admission of the exhibit at trial, appellant waived any error concerning the admission of the exhibit. Evid.R. 103(A)(1) provides that error may not be predicated upon a ruling admitting evidence unless the party opposing the admission made timely objection to the evidence.[2]

Accordingly, based upon the foregoing reasons, we overrule appellant's third assignment of error.

*Judgment affirmed.*

STEPHENSON and GREY, JJ., concur.

---

**2.** Evid.R. 103 provides in pertinent part:
"(A) *Effect of Erroneous Ruling.* Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and
"(1) *Objection.* In case the ruling is one admitting evidence, a timely objection or motion to strike appears of record stating the specific ground of objection, if the specific ground was not apparent from the context[.]"