OPINION
{¶ 1} Appellant Kenneth W. Swartz appeals from his divorce entered in the Fairfield County Court of Common Pleas, Domestic Relations Division. Appellee Lynn L. Swartz is appellant's former spouse. The relevant facts leading to this appeal are as follows.
 {¶ 2} Appellant and appellee were married on August 30, 1991. No children were born of the marriage. Appellant filed a complaint for divorce on April 3, 2000. The court on that same date approved a temporary restraining order ("TRO"), submitted by appellant, regarding disbursement or encumbrance of assets. At about the same time, appellee's parents, James and Lee Walden ("the Waldens"), moved in with appellee at the marital residence on Lithopolis Road, which consisted of a house and a small horse farm on approximately nine acres. During the marriage, appellant and appellee started a business on the horse farm known as Bentwood Stables, which they ran as a "d.b.a." Shortly before the divorce trial, scheduled for August 2001, the Waldens filed a lawsuit in the Fairfield County Court of Common Pleas, General Division, seeking recovery for over $30,000 in loans allegedly made to appellee for property improvements during the pendency of the divorce action. They therein further alleged an equitable lien against the marital estate. Appellant thereupon moved to continue the divorce trial date based upon the potential impact upon the divorce proceedings, which the trial court granted. Appellant then moved for consolidation of the Walden's lawsuit with the divorce action, which the trial court also granted.
 {¶ 3} Following the completion of additional discovery, the divorce trial commenced on November 13, 2001. A significant portion of the testimony pertained to expert evaluations of the marital real estate, particularly as to the value of the horse farm and the large horse barn and related buildings located on the property. After four days of trial and the submission by all parties of proposed findings of fact and conclusions of law, the trial court issued findings on February 14, 2002. The final judgment entry of divorce was filed on March 18, 2002. The trial court therein granted, inter alia, the Waldens a judgment against both appellant and appellee, jointly and severally, in the amount of $32,575 plus interest. The marital estate was also reduced by a credit card loan of approximately $15,900 paid by appellee. No spousal support was ordered. The Lithopolis Road property was ordered to be retained by appellee, with the order that she would refinance or otherwise remove appellant from liability on the mortgage. Appellant was then ordered to quitclaim his interest on the real estate. The Court further ordered:
 {¶ 4} "In the event that Defendant is unable to refinance or otherwise remove the Plaintiff from liability on the mortgage to Bank One, the marital real estate shall be listed with a realtor and sold at a fair market price. The net proceeds, after costs of sale, shall be paid as follows: Bank One Mortgage, James and Leola Walden's judgment in the amount of $32,575.64 plus interest, Defendant's MBNA credit card balance, and all remaining proceeds to Defendant. In the event that there remains a deficiency amount due and owing to James and Leola Walden on the judgment, the Plaintiff and Defendant, Swartz shall each pay one-half (½) of the deficit amount to clear the title for sale." Judgment Entry of Divorce at 3.
 {¶ 5} On April 11, 2002, appellant filed a notice of appeal. Both Appellee Lynn Swartz and the Waldens have filed appellee's briefs in this appeal. Appellant's Assignments of Error are as follows:
 {¶ 6} "I. The trial court abused its discretion and erred as a matter of law in adopting the opinion of appellee's appraiser as to the value of the marital real estate when said opinion discounted the value of the property, without proper foundation, for `functional depreciation'.
 {¶ 7} "II. The trial court abused its discretion and erred as a matter of law in refusing to order that the marital real estate be sold at auction, where there was a $100,000 dispute as to the valuation of the real estate and the court adopted the lower appraisal which was without proper foundation.
 {¶ 8} "III. The court abused its discretion and erred as a matter of law in reducing the marital assets in the full amount of debt allegedly incurred by appellee during the pendency of the case, in violation of the temporary restraining order issued at the commencement of the divorce action and served upon the appellee prior to the receipt of said loans.
 {¶ 9} "IV. The trial court abused its discretion and erred as a matter of law in reducing the value of the marital real estate by the amount of the loans incurred by the appellee during the pendency of this cause.
 {¶ 10} "V. The trial court abused its discretion and erred as a matter of law in finding that the appellee benefitted from the full value of the walden loan and the credit card loan in the form of increased value on the marital real estate.
 {¶ 11} "VI. The trial court abused its discretion and erred as a matter of law in failing to offset the walden loan in the amount of unpaid rents.
 {¶ 12} "VII. The trial court abused its discretion and erred as a matter of law in reducing the marital debts in the amount of reduction of principal paid during the pendency of the divorce case when the sole source of income of the appellee was marital.
 {¶ 13} "VIII. The trial court abused its discretion and erred as a matter of law in failing/refusing to segregate the value of pre-marital assets of appellant while at the same time allowing pre-marital offsets to the appellee for items which did not exist or were fabricated."
 I. {¶ 14} In his First Assignment of Error, appellant contends the trial court erred in adopting the opinion of appellee's real property appraiser, whose opinion discounted for "functional depreciation." We disagree.
 {¶ 15} We generally review the overall appropriateness of a trial court's property division in divorce proceedings under an abuse of discretion standard. Cherry v. Cherry (1981), 66 Ohio St.2d 348. However, with the enactment of R.C. 3105.171, the characterization of property as separate or marital is a mixed question of law and fact, not discretionary, and the characterization must be supported by sufficient, credible evidence. Chase Carey v. Carey (Aug. 26, 1999), Coshocton App. No. 99CA1; see, also, McCoy v. McCoy (1995), 105 Ohio App.3d 651, 654;Kelly v. Kelly (1996), 111 Ohio App.3d 641. Once the characterization has been made, the actual distribution of the asset may be properly reviewed under the more deferential abuse-of-discretion standard. R.C. 3105.171(D);Blakemore v. Blakemore (1983), 5 Ohio St.3d 217. In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Id. The trial court's property division should be viewed as a whole in determining whether it has achieved an equitable and fair division. Briganti v. Briganti (1984), 9 Ohio St.3d 220, 222.
 {¶ 16} Appellant called Dan Singer as his real estate appraisal expert. Singer first utilized a "cost approach" to evaluate the marital real estate and horse farm in Lithopolis Road (hereinafter "the farm"). Based on this valuation method, he opined the farm was worth $389,700. He secondly provided a valuation based on the "sales comparison approach" in the amount of $360,000. In contrast, appellee's appraisal expert, John Peck, indicated that by his "cost approach" analysis, the farm was valued at $284,475. Using a "sales comparison" method, Peck arrived at a figure of $370,000. However, Peck then factored in a $100,000 decrease to the sales comparison figure on the basis of "functional depreciation," also referred to as "superadequacy" during the trial. Peck succinctly described this factor as "too much building for too small of a site." Tr. at 424. Peck, who had thirty-nine years of appraisal experience, in essence opined that of the approximately eight acres left of the farm after allowing for the space of the house and its curtilage, barns, and outbuildings, the land could not adequately support the thirty-four stalls and horses for which the facility was set up.
 {¶ 17} In support of his position, appellant cites Rollman Sons Co. v. Board of Revision (1955), 163 Ohio St. 363, 364, a tax case, wherein the Ohio Supreme Court defined functional depreciation as occurring "where property, although still in good physical condition, has become obsolete or useless due to changing business conditions and thus, to all intents and purposes, valueless for tax purposes." The Court further stated: "Where a taxpayer is claiming a greater than ordinary amount for depreciation due to functional obsolescence, the burden is upon the taxpayer to establish such fact by competent evidence, and such burden is not sustained where the only evidence introduced as to such fact is the unsupported opinion of a witness for the taxpayer, who fails, though requested to do so, to substantiate his opinion with facts and figures." Id. at 365. Appellant also cites our decision in Myers v.Myers, (Aug. 31, 1992), Licking App. No. 92-CA-13. However, in that case, we noted that the finding of the trial court was contrary to a stipulated appraisal report. In the case sub judice, Peck testified that the $100,000 functional depreciation figure was "very subjective," but nonetheless was based on his "experience doing properties like this." Tr. at 412. Finally, especially as pertains to appellant's claim that Peck's figure should have been excluded as a violation of Evid.R. 702 (regarding testimony by experts), we note appellant did not object to the introduction of Peck's appraisals on such grounds. See, e.g., GenesisRespiratory Services, Inc. v. Hall (1994), 99 Ohio App.3d 23,649 N.E.2d 1266.
 {¶ 18} We note "[t]he common pleas court is not required to adopt the valuation of any witness, but is instead vested with wide discretion to determine the weight of the evidence and the credibility of witnesses." Murray v. Marina, Inc. v. Erie Cty. Bd. Of Revision (1997),123 Ohio App.3d 166, 172. Upon review of the record, we find no error of law or abuse of discretion in the trial court's conclusions regarding valuation of the farm.
 {¶ 19} Appellant's First Assignment of Error is overruled.
 II. {¶ 20} In his Second Assignment of Error, appellant argues the trial court erred in refusing to order the marital estate auctioned, where there was a $100,000 variance between each side's appraisal based on functional depreciation. We disagree.
 {¶ 21} Appellant contends that ordering a sale of the farm under this scenario would have obviated the valuation dispute discussed in appellant's First Assignment of Error. Certainly, in an ideal setting, the closest approximation of true market value for most property would be an actual arm's length sale between a willing buyer and seller. See Board ofRevision v. One Euclid Company (1968), 16 Ohio St.2d 43, 46,242 N.E.2d 582. However, upon review of the record in this matter, we are unpersuaded that the court's decision not to order an auction or sale was outside its broad discretion to fashion an equitable division of marital property. Bisker v. Bisker (1994), 69 Ohio St.3d 608, 609, 635 N.E.2d 308;Kerchenfaut v. Kerchenfaut, 2001-Ohio-2259, Allen App. No. 1-01-04.
 {¶ 22} Appellant's Second Assignment of Error is overruled.
 III. {¶ 23} In his Third Assignment of Error, appellant argues the trial court erred in reducing marital assets based on debts allegedly incurred by appellee in violation of the TRO filed at the commencement of the divorce action. We disagree.
 {¶ 24} The standard of review regarding whether a party has violated a domestic relations temporary restraining order by utilizing marital assets is that of abuse of discretion. See Smith v. Smith (Feb. 15, 1989), Summit App. No. 13678; Spaith v. Spaith (Sept. 9, 1987), Montgomery App. No. 10229. Appellant suggests that appellee's debts incurred following the filing of the divorce and contemporaneous TRO should have been charged to appellee as a matter of law, citing our decision in Gerencser v. Gerencser (April 19, 1999), Fairfield App. No. 98CA00060. However, our decision in that case stemmed from the depletion of marital assets by a husband paying his wife a sum from the principal in a mutual fund, despite a specific order to pay the sum from his income. This is distinguishable from the case sub judice, wherein appellee's acts were found to have been an effort to avoid waste to the marital estate.
 {¶ 25} Thus, in the case sub judice, the court found that appellee and the Waldens made significant improvements to the marital property and farm, where appellee continued to reside during the pendency of the divorce, incurring debt in relation thereto. The court likewise found waste and diminution of the property and buildings would have resulted had it not been for these efforts. We are therefore unpersuaded upon review that the court abused its discretion in rendering its equitable resolution as to the marital assets, despite the apparent technical violation of the TRO.
 {¶ 26} Appellant's Third Assignment of Error is overruled.
 IV. {¶ 27} In his Fourth Assignment of Error, appellant argues the trial court erred in reducing the marital real estate value by the amount of a credit card loan and loans from the Waldens obtained by appellee during the pendency of the divorce. We disagree.
 {¶ 28} It is undisputed the trial court premised its reduction to the marital estate under an equitable lien theory. The doctrine of equitable liens has been liberally extended in order that the intention of the parties, to create specific charges, may be justly and effectually carried out. Empire Affiliates Credit Union v. Osborne (Aug. 23, 1999), Richland App. No. 99 CA 43, citing 34 Ohio Jurisprudence 2d 428, Liens, Section 18. As per our discussion in appellant's Third Assignment of Error, we find the imposition of the lien was within the discretion of the court, acting under its equitable powers, under the facts and circumstances of this case.
 {¶ 29} Accordingly, appellant's Fourth Assignment of Error is overruled.
 V. {¶ 30} In his Fifth Assignment of Error, appellant argues the trial court erred in finding that appellee had benefitted, in the form of increased value on the marital estate, from the Walden loan and the credit card loan. We disagree.
 {¶ 31} Appellant takes specific dispute with the following conclusions rendered by the trial court:
 {¶ 32} "The plaintiff and defendant Swartz have both benefitted from said sums expended, by the resulting increase in the value of the property. Both real estate appraisers, Dan Signer and John Peck and contractor, Carroll Gang testified that the property value was enhanced by the maintenance and repairs made by defendants Swartz and Walden. Each expert further testified that said repairs, maintenance, upkeep and improvements further prohibited diminution of the property value by allowing the property to continue to operate a business and be habitable.
 {¶ 33} "* * *
 {¶ 34} "The Plaintiff and Defendant Swartz further benefitted from said upkeep, maintenance, repairs and improvements by maintaining and increasing the boarding operation which was the sole source of financial support for Defendant Swartz and the payment of the mortgage, utilities, equipment debts and living expenses. Otherwise, the parties would have been unable to pay any marital debts." Judgment Entry at 10.
 {¶ 35} Appellant contends the record is "bereft" of testimony to support the aforesaid determination by the trial court. Appellant's Brief at 20. However, upon review of the four-day trial record in this matter, we cannot concur. Moreover, evidence was adduced which showed appellant was quite aware of the improvements as they progressed. It is well-established that, as an appellate court, we are not fact finders; we neither weigh the evidence nor judge the credibility of witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. Cross Truckv. Jeffries (Feb. 10, 1982), Stark App. No. CA-5758. We therefore find no error or abuse of discretion regarding the valuation of the marital estate and/or the finding of appellee's prevention of diminution of said value.
 {¶ 36} Appellant's Fifth Assignment of Error is overruled.
 VI. {¶ 37} In his Sixth Assignment of Error, appellant argues that the trial court erred in failing to offset the Walden loan in the amount of the Waldens alleged unpaid rents to appellee. We disagree.
 {¶ 38} Appellee testified at deposition that when her parents, the Waldens, moved into marital residence in April 2000, there was an agreement for the Waldens to pay her $1000 per month for rent. However, there was also testimony indicating that the "rent" was an actuality an arrangement wherein the Waldens would provide value in groceries and other household expenses in roughly that amount. As appellant notes, the testimony on this issue was at times inconsistent; however, we find no basis to alter the trial court's discretionary conclusion that this arrangement did not equate to rent, and thus required no offset. CrossTruck, supra.
 {¶ 39} Appellant's Sixth Assignment of Error is therefore overruled.
 VII. {¶ 40} In his Seventh Assignment of Error, appellant argues the trial court erred in reducing the marital debts by an amount which included the principal reduction made by appellee during the pendency of the divorce. We disagree.
 {¶ 41} The trial court in the case sub judice in essence concluded it would be inequitable for appellant to enjoy the reduction in debt which occurred after the parties' separation. The evidence established that appellant left the marital residence and did not contribute thereafter to the marital estate or the operation of the horse farm and stabling business. As previously recited, a trial court's property division should be viewed as a whole in determining whether it has achieved an equitable and fair division. Briganti, supra. We therefore find no basis to substitute our judgment for that of the trial court in this regard.
 {¶ 42} Appellant's Seventh Assignment of Error is overruled.
 VIII. {¶ 43} In his Eighth Assignment of Error, appellant argues the trial court erred in failing to segregate the value of appellant's pre-marital assets, while allegedly allowing segregation on behalf of appellee.
 {¶ 44} Appellant concedes that should we overrule his previous Assignments of Error, the case sub judice stands as a no-asset divorce, making his Eighth Assignment of Error merely academic. We therefore find this argument moot. Appellant's Eighth Assignment of Error is overruled.
 {¶ 45} For the foregoing reasons, the judgment of the Court of Common Pleas, Domestic Relations Division, Fairfield County, Ohio, is hereby affirmed.
By: Wise, J., Gwin, P.J., and Boggins, J., concur.
Topic: Valuation of Marital Property.