[Cite as *2115-2121 Ontario Bldg., L.L.C. v. Anter*, 2013-Ohio-2993.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**Nos. 98255 and 98296**

# 2115-2121 ONTARIO BUILDING, L.L.C.

PLAINTIFF-APPELLEE

vs.

# DOLORES ANTER, ET AL.

DEFENDANTS- APPELLANTS

**JUDGMENT:**
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-752119

**BEFORE:** E.T. Gallagher, J., Boyle, P.J., and Rocco, J.

**RELEASED AND JOURNALIZED:** July 11, 2013

**ATTORNEYS FOR APPELLANT**S

**For Theresa Julia Kratus**

Philip Wesley Lambert
James F. Koehler
Koehler Neal, L.L.C.
1301 East Ninth Street
3330 Erieview Tower
Cleveland, Ohio   44114

**For Dolores Anter, et al.**

David C. Eisler
P.O. Box 1721
Medina, Ohio   44258

**ATTORNEYS FOR APPELLEE**S

Richard P. Goddard
Alexander B. Reich
Calfee, Halter & Griswold, L.L.P.
The Calfee Building
1405 East Sixth Street
Cleveland, Ohio   44114

EILEEN T. GALLAGHER, J.:

{¶1}   In this consolidated appeal, defendants-appellants William H. Maloof, Angela Maloof, S.A.M. Inc., Nora Maloof, Macron Investment Company, Joseph Edward Anter, Dolores Anter, and Theresa Julia Kratus (collectively "appellants") appeal the trial court's decision granting summary judgment in favor of plaintiff-appellee 2115-2121 Ontario Building, L.L.C. ("Ontario").   In her consolidated appeal, appellant Theresa Julia Kratus also appeals the trial court's judgment taxing certain court reporter fees as costs. We find no merit to the appeals and affirm the trial court's judgments.

{¶2} This dispute involves the validity of a single share of stock in Macron Investment Company ("Macron").   Ontario filed its complaint seeking: (1) a declaratory judgment that it is the owner of 32 of 64 outstanding Macron shares; (2) an injunction ordering Macron to deliver to Ontario a share certificate representing 32 shares of Macron common stock; and (3) an accounting.   Ontario alleged that it purchased 32 shares and 50 percent of the issued and outstanding shares of Macron stock in good faith and without knowledge of any defect in any of the purchased shares.

{¶3} Appellant Theresa Julia Kratus ("Kratus") filed a counterclaim for declaratory relief, requesting a declaration that 63, not 64 shares of Macron common stock are issued and outstanding.   Appellants contend that Ontario purchased only 31 shares of Macron stock and held a position as a minority shareholder.   Appellants assert that the disputed share ("share 64") is invalid because it was never properly issued by the corporation.

{¶4} Macron's primary asset was a building located at 2115-2121 Ontario Street in Cleveland, formerly known as the Stanley Block Building. In 1967, Julia Macron, who was the sole owner of all 63 shares of Macron stock, distributed the shares to her eight nieces and nephews as gifts. Each niece and nephew received eight shares, except for Kimberly Maloof Haikal ("Kimberly"), who only received seven shares. William Maloof, who was an adult in 1967, received his eight shares in his own name. The remaining nieces and nephews were minors and their share certificates were issued to Nora Maloof, as custodian for the individual minors.

{¶5} After Julia Macron died in 1974, Macron's shareholders elected Nora Maloof, Dolores Anter, and Wesley C. Smith as the directors of the corporation. None of the directors were ever shareholders, and there is no evidence that the composition of the board of directors ever changed.

{¶6} On June 29, 1990, after all shareholders had reached the age of majority, Macron issued stock certificates to each shareholder in his or her own name. These certificates were numbered 101 through 109 and represented a total of 64 shares of stock. Certificate No. 101, representing eight shares, was issued to William Maloof and states that it is a transfer from "Nora Maloof, Custodian," even though he was an adult when Julia Macron gifted the shares to him in 1967. The same notation appears on certificate No. 105, representing seven shares, and certificate No. 109, representing one share, both of which were issued to Kimberly. Two of the three directors of the corporation, president Nora Maloof and secretary Dolores Anter, executed each of the nine share

certificates. Without exception, all of the share certificates state that each named shareholder is the owner of "fully paid and non-assessable shares of the par value of $100.00 each of common stock."

{¶7} On July 31, 2010, Macron issued share certificate No. 110 to Kimberly to reflect her purchase of eight shares of stock from Julie Anter. On August 2, 2010, Macron issued share certificates Nos. 111 and 112 to Samir Haikal, Kimberly's husband, to reflect his purchase of 16 shares from Virginia Marie Maloof and Faye Judith Maloof.[1] Together, Kimberly and Samir Haikal owned share certificate Nos. 105, 109, 110, 111, and 112, which represented a total of 32 of the 64 shares, or 50 percent of Macron stock.

{¶8} Ontario was formed for the purpose of buying the Stanley Block Building located at 2115-2121 Ontario Street. In the fall of 2010, Louis Frangos ("Frangos"), president of USA Parking Systems, Inc. ("USA Parking") and Ontario's managing member, attempted to purchase the Stanley Block Building. When negotiations failed to result in a sale, USA Parking entered into a stock purchase agreement with Kimberly and Samir Haikal to purchase their 50 percent ownership interest in Macron for $284,375. The sale, which was scheduled to close on January 31, 2011, was contingent on USA Parking's satisfactory inspection of the "records of the company."

---

[1] Virginia Marie Maloof sold the eight shares of Macron stock she owned pursuant to share certificate No. 108. Faye Judith Maloof sold the eight shares of Macron stock she owned pursuant to share certificate No. 104. Share certificate Nos. 102 and 104 were replaced by share certificate Nos. 111 and 112.

**{¶9}** On January 14, 2011, USA Parking assigned its rights in the stock purchase agreement to Ontario. On that same date, Kimberly and Samir Haikal sold their shares to Ontario. Prior to January 14, 2011, the Haikal's attorney informed Frangos that there may be a defect in one of the shares he sought to purchase from Kimberly and Samir Haikal, which would prevent him from obtaining a 50 percent interest in Macron. Although Frangos's review of the corporate records had satisfied him that the Haikals owned 32 out of 64 shares, Frangos asked William Maloof's attorney for documents or other evidence substantiating his claim that Kimberly and Samir Haikal did not own 32 of Macron's 64 outstanding shares. Instead of producing the requested evidence, William Maloof's attorney sent an email to Frangos, which stated in relevant part:

> The Macron Investment Trust controls Macron Investment. This trust is irrevocable and unbreakable, and my clients' shares control the trust. Mr. Haikal neither controls the corporation, nor does he have an equal share of the stock. We will be demanding the Corporate Record Book and the check book in the immediate future as controlling shareholders.

**{¶10}** Macron refused to execute and deliver to Ontario the stock certificates to reflect its purchase of 32 shares of Macron stock, and Ontario filed the instant action. Meanwhile, the Stanley Block Building was condemned by the city of Cleveland and accumulated fines against Macron in the amount of $15,000 per day. Fines totaled over $1,000,000.

**{¶11}** The trial court granted summary judgment in favor of Ontario and denied appellants' joint motion for summary judgment. The court determined that Macron's

issuance of share 64 to Kimberly in 1990, as reflected in stock certificate No. 109, was valid and that Kimberly and Samir Haikal sold 32 of the 64 outstanding shares to Ontario.

{¶12} Appellants filed separate appeals, which this court consolidated. In both appellants' briefs, they argue the trial court erred in denying their motions for summary judgment and in granting summary judgment in favor of Ontario. They contend that: (1) Macron never ratified the issuance of share 64, and (2) Ontario was not a good faith purchaser of stock certificate No. 109 for value.

**Mootness**

{¶13} As a preliminary matter, we find that this appeal is not moot, even though the receiver issued the stock certificates reflecting Ontario's purchase of the 32 shares of Macron stock in accordance with the trial court's judgment.

{¶14} An appeal is moot when there is no actual controversy to be resolved by the appeal, which would result in this court issuing a mere advisory opinion on abstract questions. *Thomas v. Cleveland*, 140 Ohio App.3d 136, 142, 746 N.E.2d 1130 (8th Dist. 2000). Thus, an appeal is moot if it is impossible for this court to decide the case in favor of the appellant and provide the appellant any effectual relief. *State ex rel. Eliza Jennings, Inc. v. Noble*, 49 Ohio St.3d 71, 74, 551 N.E.2d 128 (1990).

{¶15} In this case, the court's judgment declared that the disputed 64th share was valid. The validity of the disputed 64th share is still an issue in this case because this court could reverse the trial court's declaratory judgment and find the share invalid. Therefore, this appeal is not moot.

## Standard of Review

{¶16} Civ.R. 56(C) provides that summary judgment is appropriate when after construing the evidence in favor of the nonmoving party, there is no genuine issue of material fact, and reasonable minds can only reach a conclusion that is adverse to the nonmoving party. *Zivich v. Mentor Soccer Club Inc.*, 82 Ohio St.3d 367, 369-370, 1998 Ohio 389, 696 N.E.2d 201. We review the trial court's judgment de novo using the same standard that the trial court applies under Civ.R. 56(C). *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 1996-Ohio-336, 671 N.E.2d 241.

## Ratification

{¶17} Appellants argue that Macron never issued the 64th share because the board never issued the share at a formal board meeting. They contend the trial court erred in finding that Macron directors and shareholders ratified the unauthorized issuance of share 64.

{¶18} In general, the actions of individual officers or directors of a corporation are not binding on the corporation, unless such actions are taken at a formal meeting in which the directors act collectively as a board. *Perfection Graphics v. Sheehan,* 11th Dist. No. 93-G-1776, 1995 Ohio App. LEXIS 783 (Mar. 3, 1994). However, there is an exception to this formal meeting requirement, and the corporation may nevertheless be bound by one of its agent's actions if the action is ratified by the board. Ratification by directors may be by an express resolution or vote to that effect, or it may be implied from adoption of the act, acceptance of benefits, or acquiescence. *Campbell v. Hospitality Motor Inns, Inc.*, 24 Ohio St.3d 54, 57, 493 N.E.2d 239 (1986), quoting Fletcher, *Cyclopedia of the Law of Private Corporations*, Section 762, at 444-445 (1982).

{¶19} The consequences of ratification are the same as if the original act had been authorized. *Integrated Payment Sys. v. A&M 87th Inc*., 8th Dist. Nos. 91454 and 91473, 2009-Ohio-2715, citing Restatement of the Law 2d, Agency, Section 82, Comment b (1984).

{¶20} Appellants argue the trial court erroneously relied on *Kimball v. Kimball Bros., Inc*., 143 Ohio St. 500, 56 N.E.2d 60 (1944), when it found that Macron ratified Nora Maloof and Julie Anter's issuance of the 64th share. They claim *Kimball* is inapplicable to the instant case because it involved ratification of a contract and not the unauthorized issuance of a share of stock. However, in reaching its holding, the *Kimball* court applied established principles of agency law, which are not limited to contracts and apply to a variety of unauthorized acts of corporate agents.

**{¶21}** In *Kimball*, the court found that the president's unauthorized execution of a promissory note was ratified by the board, which failed to maintain regular board meetings as required by the corporation's bylaws. The court further found that the corporation routinely allowed the corporate officers to operate the corporate business without formal meetings. Hence, the court found that the board acquiesced in the president's execution of the promissory note because the directors failed to act as a board. *Id.*

**{¶22}** Other Ohio courts have reached the same conclusion. In *Perfection Graphics*, 11th Dist. No. 93-G-1776, 1995 Ohio App. LEXIS 783, the court held that a formal meeting is unnecessary to bind a corporation when the number of directors is relatively small and they are personally involved in the operation of the business. In *Piening v. Titus, Inc.*, 113 Ohio App. 532, 179 N.E.2d 374 (2d Dist. 1960), the court held that an agreement to purchase the shares of a dissenting shareholder at a certain price was binding on the corporation even though a formal meeting of the directors had never been held. In reaching this conclusion, the court emphasized that the corporation conducted business informally. *Id.* at 537.

**{¶23}** In this case, although Macron issued the 64th share to Kimberly without a formal meeting, two of the three directors (Nora Maloof and Dolores Anter) consented to the action, as evidenced by their signatures on the share certificate. The third director, Wesley Smith, who has been the custodian of the share certificates since their issuance in 1990, never objected to the issuance of certificate No. 109. Indeed none of the other

seven shareholders, all of whom received their own certificates when the new share was issued, objected to, or attempted to repudiate, the board's action for over 20 years since the share was issued. Therefore, the trial court properly determined that the board of directors and all the shareholders of Macron ratified the issuance of the 64th share to Kimberly. Pursuant to the stock purchase agreement, Ontario is entitled to 32 shares of Macron stock, including the disputed 64th share, represented by stock certificate No. 109.

{¶24} Accordingly, appellants' first assignment of error is overruled.

## Costs

{¶25} In Theresa Julia Kratus's second assignment of error, she argues the trial court erred by including Ontario's litigation costs in its order, taxing costs against the appellants. Kratus contends the trial court erred in taxing court reporter and videographer fees as costs. However, the court only awarded the cost of Ontario's fee for filing the complaint and the costs of four deposition transcripts. It did not tax videographer fees as costs. Because appellants do not dispute the court's authority to tax the filing fee as costs, we need only determine whether the trial court abused its discretion by taxing court reporter fees for four deposition transcripts as costs.

{¶26} Civ.R. 54(D) provides: "Except when express provision therefore is made either in a statute or in these rules, costs shall be allowed to the prevailing party unless the court otherwise directs." This rule grants the trial court broad discretion to assess costs, and the court's ruling will not be reversed absent an abuse of that discretion. *Vance v. Roedersheimer*, 64 Ohio St.3d 552, 555, 597 N.E.2d 153 (1992).

**{¶27}** The categories of litigation expenses comprising "costs" are limited. *Centennial Ins. Co. v. Liberty Mut. Ins. Co.*, 69 Ohio St.2d 50, 430 N.E.2d 925 (1982). "Costs are generally defined as the statutory fees to which officers, witnesses, jurors and others are entitled for their services in an action *and* which the statutes authorize to be taxed and included in the judgment." (Emphasis added.) *Benda v. Fana*, 10 Ohio St.2d 259, 227 N.E.2d 197 (1967), paragraph one of the syllabus. R.C. 2317.27 does not provide a statutory basis for taxing a court reporter's fees as costs under Civ.R. 54(B). *Beal v. State Farm Ins. Co.*, 132 Ohio App.3d 203, 210, 724 N.E.2d 860 (8th Dist.1999). This court has previously held that "in the absence of statutory authorization, deposition costs and other litigation expenses may not be properly taxed as costs." *Id*., citing *Carr v. Lunney*, 104 Ohio App.3d 139, 661 N.E.2d 246 (8th Dist.1995).

**{¶28}** However, in *Naples v. Kinczel*, 8th Dist. No. 89138, 2007-Ohio-4851, ¶ 13, this court held that a deposition transcript may be taxable as costs pursuant to R.C. 2303.21, which states:

> When it is necessary in an appeal, or other civil action to procure a transcript of a judgment or proceeding, or exemplification of a record, as evidence in such action or for any other purpose, the expense of procuring such transcript or exemplification shall be taxed in the bill of costs and recovered as in other cases.

As this court explained in *Naples*, R.C. 2303.21 has been held to apply only to the expenses associated with the procuring of a transcript of a deposition when it is necessary. *Id.*, citing *Brodess v. Bagent*, 10th Dist. No. 04AP-623, 2005-Ohio-20;

*Wingfield v. Howe*, 8th Dist. No. 85721, 2006-Ohio-276. It does not apply to expenses relating to the attendance of the court reporter at the deposition. *Id.*

**{¶29}** In its motion to tax costs, Ontario sought an award of costs totaling over $5,000. The bill of costs included fees for videographers, attempted depositions, court reporter fees for attending depositions, and deposition transcripts. The court awarded only the filing fee and the costs of four deposition transcripts as costs. The deposition transcripts were necessary to support Ontario's motion for summary judgment. Civ.R. 56(C) expressly states that the court shall grant summary judgment only if the evidence, in the form of depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. The deposition transcripts provided evidence that the board of directors and shareholders of Macron, ratified the issuance of the 64th share to Kimberly. The transcripts also proved Ontario's claim of ownership of 32 of the outstanding 64 shares pursuant to the stock purchase agreement. Therefore, the trial court acted within its discretion when it taxed the expenses of deposition transcripts as costs.

**{¶30}** Kratus's second assignment of error is overruled.

**{¶31}** Judgments affirmed.

It is ordered that appellee recover from appellants costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


EILEEN T. GALLAGHER, JUDGE

MARY J. BOYLE, P.J., and
KENNETH A. ROCCO, J., CONCUR