OPINION
{¶ 1} Appellant, Terry Merriman, appeals from the judgment of the Portage County Court of Common Pleas, Domestic Relations Division, awarding appellee, Rhonda L. Merriman, $7,876.16 in arrearages which accrued during the pendency of their divorce.
 {¶ 2} On July 20, 2000, appellant filed his complaint for divorce. On September 5, 2000, the cause came on for a Civ.R. 75 hearing before Magistrate Douglas J. Sendry. As a result, the magistrate issued a temporary order detailing, inter alia, the parties' various financial obligations. With respect to the parties' household and installment obligations, the court ordered appellant to pay the "second mortgage,[1]
($175.00/M), a Lowe's bill ($100.00/M), a water softener bill ($62.00/M), a hospital bill ($30.00/M), an auto loan ($125.00/M), a school loan ($165.00/M), and one half of the utilities."[2]
 {¶ 3} The divorce hearing was held on May 7, 2002.[3] The parties agreed that the issues addressed in the September 5, 2000 temporary order would not be merged into the final divorce decree. Rather, a hearing was conducted on January 27, 2003 to settle any outstanding issues attendant to the parties' obligations under the temporary order. Both appellant and appellee were present at the hearing and presented testimony as to any outstanding financial obligations. At trial, testimony established that appellant vacated the marital residence in March of 2001. On direct examination, appellant testified that he stopped making payments pursuant to the temporary order in October of 2001 due to certain disputes involving the parties' daughter.
 {¶ 4} Appellee submitted an exhibit summarizing her payment history of various debts, beginning on March 1, 2001. Included in this ledger are payment histories for the home equity loan, utility expenses, property taxes, and house insurance. In sum, appellee's exhibit ascribed $8,620.46 for which appellant was financially responsible, yet failed to pay.
 {¶ 5} With respect to the utilities, appellant contended that he had paid all the phone and electric bills; however, after October 2001, appellant testified he never received a water softener bill. Alternatively, appellee's exhibit indicates that appellant's payments on the electric and the phone bills ceased in early October of 2001. Because of this dispute, the trial court permitted appellant to collect any evidence of past payment and submit it to the court within seven days. Appellant failed to do so.
 {¶ 6} On February 11, 2003, the trial court issued its order requiring appellant to reimburse appellee for electric bills, telephone bills, the home equity loan, as well as property insurance costs and real estate taxes from March 1, 2001 through July 1, 2002. The court noted that appellant "was offered the opportunity to supplement the record with copies or any recording of checks that he had paid for these enumerated items during the time period at issue. To date the Court has not received any information from appellant." Thus, the court awarded appellee $8,620.46 in arrearages.
 {¶ 7} On March 3, 2003, appellant filed a Civ.R. 60(B) motion for relief from the February 11, 2003 order. Appellant alleged that the trial court's award of $8,620.46 was based upon several mistakes of fact. Specifically, appellant asserted that the trial court utilized the wrong time frame in computing the arrearages. Further, appellant noted, the court included financial obligations not included in the original temporary order, viz., real estate taxes and insurance expenses. Finally, appellant argued, the court "unilaterally accepted appellee's exhibit" despite its disputed contents.
 {¶ 8} The court conducted a hearing on appellant's Civ.R. 60(B) motion on May 16, 2003. On June 10, 2003, the court filed its order granting appellant's motion in part. In particular, the court stated that because the marriage was terminated in May 2002, appellant should not be responsible for any subsequent expenses. Thus, the court deducted those expenses incurred by appellee for the period between May and June of 2002. In total, appellant was ordered to finally pay $7,876.16 in arrearages to appellee. The current appeal followed with appellant assigning two errors for our consideration.
 {¶ 9} Under his first assignment of error, appellant initially contends that the court abused its discretion when it ordered appellant to pay expenses he was not obligated to pay under the temporary order.
 {¶ 10} After granting a divorce, a trial court is afforded broad discretion to equitably divide and distribute marital assets and liabilities between the parties. Levy v. Levy (Feb. 15, 1991), 11th Dist. No. 90-T-4414, 1991 Ohio App. LEXIS 682, at 4; see also, McQuinnv. McQuinn (1996), 110 Ohio App.3d 296, 303. An appellate court should measure the trial court's adherence to this principle but not substitute its judgment for that of the fact finder unless, considering the totality of the circumstances, it finds the trial court abused its discretion.Holcomb v. Holcomb (1989), 44 Ohio St.3d 128, 130. An abuse of discretion involves more than an error of law or judgment; rather, it suggests that the trial court's decision was unreasonable, arbitrary, or unconscionable. McQuinn, supra, citing, Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219.
 {¶ 11} In the current matter, appellant challenges the inclusion of real estate taxes and home insurance. Appellant is correct that his obligations under the temporary order did not include these expenses. However, as indicated above, the division of marital property in terms of both assets and liabilities must be equitable. Levy, supra. By the very nature of the term, an equitable distribution is one "marked by due consideration for what is fair, unbiased, or impartial." United Statesv. 11,360 Acres of Land in Yuba Co., CA (N.D. Ca. 1945), 62 F. Supp. 968,970.
 {¶ 12} In the parties divorce decree, the court found that both parties were mutual owners of the marital residence. Appellant never objected to the court's characterization. Consequently, as a co-owner of the marital home during the time in question, equity would favor appellant shouldering half of the burden of the expenses associated with said ownership.
 {¶ 13} Moreover, "[a] temporary order is merely an order to provide for the needs of the parties during the pendency of the divorce action."Martin v. Martin (Dec. 20, 2001), 8th Dist. Nos. 79219 and 79388, 2001 Ohio App. LEXIS 5736, at 29. In essence, a temporary order is a tool to allocate basic responsibilities while the divorce proceedings unfold. Nothing in this conception requires a temporary order to account for and define all obligations or needs between the parties. If an obligation, therefore, is unaccounted for in the temporary order and that obligation has not been settled by the divorce decree or the parties, via mutual agreement, equity requires its fair resolution by the court.
 {¶ 14} Although the trial court convened on January 27, 2003 to resolve the issues attendant to the September 5, 2000 temporary order, the court did not act unreasonably or arbitrarily in considering additional matters outside the explicit scope of the temporary order. In fact, to the extent that the expenses associated with the real estate taxes and home insurance needed attention the court acted reasonably, considering judicial economy, by disposing of these related issues at the January 27, 2003 hearing. Thus, as a matter of equity the court did not abuse its discretion when it ordered appellant to pay half of the real estate taxes and home insurance on the marital residence during the time in question.
 {¶ 15} Next, appellant argues that the court abused its discretion by failing to utilize the proper time frame in calculating the arrearages. In particular, appellant maintains that the court should have calculated the arrearages beginning with October 1, 2001, as that was the time he vacated the marital residence. We disagree.
 {¶ 16} It is unclear from the record the exact date on which appellant vacated the marital residence. At trial, appellant's counsel intimated that appellant vacated the residence in March of 2001. This rough date was corroborated by appellee's testimony. However, on appeal, appellant contends that he did not vacate the residence until October of 2001. Irrespective of the actual date, however, the evidence at trial demonstrated that appellee had been making payments on the home equity loan since March of 2001. Appellant offered no proof that he had paid the equity loan from March through September. Keeping in mind that appellant was charged with the responsibility of paying this loan pursuant to the temporary order, the court did not abuse its discretion by requiring appellant to pay arrearages on the home equity loan from March of 2001.
 {¶ 17} Next, appellant maintains that the lower court abused its discretion by ordering him to pay the amount set forth in appellee's sole disputed exhibit. Appellant maintains that appellee failed to support the information contained within the expense sheet with actual receipts. As such, appellant contends, the lower court unreasonably and arbitrarily admitted appellee's exhibit.
 {¶ 18} As an initial matter, appellant claims that he objected to the introduction of appellee's expense sheet. The record belies this contention. At trial, the following exchange occurred between appellee's attorney, Mr. Simon, appellant's attorney, Ms. Williams, and the court:
 {¶ 19} "Mr. Simon: * * * [I]f the court would accept it as [an exhibit], I would sure offer it.
 {¶ 20} "Ms. Williams: No. The only reason, Mr. Simon, is because there are numbered pages. On No. 2 there are things in there that have nothing to do with the temporary orders. That's why I'm asking.
 {¶ 21} "Mr. Simon: Sure. I mean, I would ask that it be admitted or considered by the court and then the relevance can be determined — probative value can be determined.
 {¶ 22} "Ms. Williams: Okay.
 {¶ 23} "The Court: Mark it as an Exhibit, Mr. Simon.
 {¶ 24} "Mr. Simon: All right, Judge.
 {¶ 25} "Ms. Williams: Mark it and then I'll ask questions on it.
 {¶ 26} "* * *
 {¶ 27} "The Court: And he indicated that there was — those things were not covered by the temporary order, taxes were not covered.
 {¶ 28} "Ms. Williams: Okay, all right.
 {¶ 29} The tenor of this discussion suggests that both parties were willing to utilize appellee's exhibit for purposes of the trial. Although appellant's counsel expressed concern about certain aspects of the exhibit, she appeared to concede that the appellee's expense sheet was permissibly admitted into evidence.
 {¶ 30} We have previously held that, to preserve a claim or objection for appeal, a party must first bring the claim or objection to the trial court's attention. In the Matter of Brunstetter (Aug. 7, 1998), 11th Dist. No. 97-T-0089, 1998 Ohio App. LEXIS 3635, at 6. Failure to make such a challenge waives the claim or objection on appeal. Id. Here, appellant's counsel not only failed to explicitly object to the introduction of appellee's exhibit, she essentially ratified its admission. Consequently, any error resulting from the admission of appellee's exhibit is waived for purposes of review.
 {¶ 31} However, even had appellant properly objected to the admission of the document, we find no error. As stated supra, the trial court gave appellant a full week to accumulate any information demonstrating payment of the outstanding arrearages. Appellant did not supply the court with any such evidence. Appellant's failure to seize this opportunity suggests that appellant found appellee's dates and figures adequate for purposes of determining arrearages.[4] Moreover, appellee's exhibit was the only documentary evidence submitted regarding the expenses addressed in the temporary order. Without the itemized detail of appellee's expense sheet, the relevant dates and expenses would have been painfully difficult, if not impossible, to reasonably ascertain. The trial court's admission of appellee's exhibit was neither arbitrary nor unreasonable. Therefore, the court did not abuse its discretion when it accepted appellee's expense sheet.
 {¶ 32} Appellant's first assignment of error is without merit.
 {¶ 33} In his second assignment of error, appellant argues that the trial court erred when it failed to vacate its February 11, 2003 order in its entirety pursuant to Civ.R. 60(B). Appellant asserts that even though the court reduced his arrearages, it still assessed real estate taxes and property insurance expenses not contained within the temporary order. Because appellant based his Civ.R. 60(B) motion on the same arguments set forth above, appellant's second assignment of error is redundant. We need not, therefore, perform a second recitation of the reasons why the court did not abuse its discretion in failing to vacate its February 11, 2003 judgment. For the reasons cited in his initial assignment of error, appellant's second assignment of error is overruled.
 {¶ 34} Appellant's two assignments of error are not well taken and the judgment of the Portage County Court of Common Pleas, Domestic Relations Division, is therefore affirmed.
Ford, P.J., Grendell, J., concur.
[1] Ultimately, this debt was labeled a "home equity loan."
[2] At trial, evidence indicated that appellant paid off the Lowe's bill; moreover, both parties agreed that they never had a hospital bill, a school loan, or an auto loan. Thus, the thrust of the litigation centered around the utilities, the home equity loan, and certain other expenses which will be discussed infra.
[3] The actual judgment entry of divorce was filed with the court on November 6, 2002. However, R.C. 3105.171(A)(2)(a) states that the period to be considered "during the marriage" is "the period of time from the date of the marriage through the date of the final hearing. * * *" As such, the marriage was terminated as of May 7, 2002.
[4] This analysis is buttressed by appellant's Civ.R. 60(B) motion, where he notes: "[A]t the conclusion of the hearings[,] the court ordered the Plaintiff to produce any records of payments. Plaintiff's understanding was receipts were to be produced if he contested the time period for the time period [sic] at issue. Since Plaintiff conceded that he did not pay for the equity loan and utilities for the time frame at issue thus [sic] he did not submit any receipts."