[Cite as *Sullinger v. Reed*, 2021-Ohio-2872.]

IN THE COURT OF APPEALS OF OHIO
THIRD APPELLATE DISTRICT
HARDIN COUNTY

DOUG SULLINGER,

    PLAINTIFF-APPELLANT,

    v.

DOUG REED, DBA R & R FARMS, ET AL.,

    DEFENDANTS-APPELLEES.

CASE NO. 6-20-14

O P I N I O N

Appeal from Hardin County Common Pleas Court
Trial Court No. CVH 20191047

Judgment Affirmed

Date of Decision:  August 23, 2021

APPEARANCES:

    *Joseph B. Clark* for Appellant

    *David R. Watkins* for Appellees, Doug and Kathy Reed, DBA R & R
    Farms

**WILLAMOWKSI, P.J.**

{¶1} Plaintiff-appellant Douglas A. Sullinger ("Doug") appeals the judgment of the Hardin County Court of Common Pleas, alleging that the trial court erred in (1) finding that a valid lease agreement existed in this case; (2) finding that Doug was a third party beneficiary of this lease agreement; and (3) not granting Doug's motion to dismiss. For the reasons set forth below, the judgment of the trial court is affirmed.

*Facts and Procedural History*

{¶2} In 2016, Doug and his brother, Don J. Sullinger ("Don"), came into ownership of a property called the Silver Creek Farm ("Silver Creek"). Tr. 168. However, their mother, Joan A. Sullinger ("Joan"), still had a life estate in this property. Tr. 168. On March 21, 2017, Don, as attorney-in-fact for Joan, entered into a lease agreement ("2017 Lease") with Douglas R. Reed ("Reed") and his wife, Kathy Reed (collectively "the Reeds"). Doc. 1. Ex. A. The Reeds did business as R & R Farms. Tr. 21-22. Ex. A. Doc. 1.

{¶3} The 2017 Lease gave the Reeds the right to farm Silver Creek and contained the following provision:

> **The term of said lease is a continuing contract based on the life of Joan A. Sullinger starting with the crop year 2017. The lease terminates on December 31 of the then current crop year that Joan A. Sullinger passes away prior to July 1st of that year. Or, the lease terminates on December 31 of the following year that Joan A. Sullinger passes away after June 30th of the then current crop year. Or either party may terminate the lease by written**

> **notice delivered on or before November 1 of any year to be
> effective on December 31 of the following year.**

Ex. A. Further, the Reeds were to make the rental payments due under the 2017

Lease on a quarterly basis. Ex. A. Tr. 23.

{**¶4**} In 2018, Reed spent roughly $6,400.00 to plant a cover crop at Silver

Creek to "benefit the soil" for the 2019 season. Tr. 27-28. Ex. M. He also took

soil samples from the fields to determine where nutrients may need to be applied.

Tr. 40. Reed testified that the lease required him to take soil samples and that this

cost him approximately $3,000.00. Tr. 42. Doc. 1. In 2018, Reed made the first

three quarterly payments that were due under the 2017 Lease to Joan. Tr. 24-25.

{**¶5**} But on November 28, 2018, Joan passed away, "vesting the [Silver

Creek] property equally in her two sons and remaindermen[, Don] and his brother

Doug Sullinger, as tenant(s) in common[.]" Doc. 30, Ex. 2. *See* Tr. 169. In

December of 2018, the final quarterly payment came due. Ex. A. In accordance

with the terms of the 2017 Lease, Reed tendered half of the fourth quarterly payment

to Don and tendered the other half to Doug. Tr. 25, 170. Ex. A. Both Doug and

Don cashed the checks that Reed had issued. Tr. 26, 169.

{**¶6**} On December 12, 2018, Doug's attorney, Kimberly Savich ("Savich"),

sent an email to Don that read as follows:

> **My condolences on the passing of your mother. Doug has asked
> me to handle the Silver Creek property for him. I understand
> that you will be taking the necessary steps to clear the property of
> the life estate designation. Please keep me apprised. Also,**

**according to the lease that you entered into on behalf of the farm, the lease with Doug Reed will terminate after next planting season. As Doug has mentioned previously, he is unhappy that the land is tied up in a lease for another year after the life estate ends. He would like to know whether Mr. Reed intends to purchase the property or if you are interested in purchasing the property. Mr. Reed can send Doug's ½ of the quarterly payment to [Address Omitted].**

Ex. B. On February 8, 2019, Savich emailed Reed the following statement:

**Doug Sullinger has received the documents that you sent. Thank you for providing those to us quickly. * * ***

**As you are aware, Doug Sullinger disagrees with Don's interpretation of the farm lease. We believe that it terminated when the life estate terminated as neither Don through the POA, nor Joan Sullinger had the authority to extend the lease out past the life estate. Please advise us as to your intentions with regards to the 2019 crop season by Friday, February 15th[, 2019].**

Ex. E. Reed testified that the documents referred to in this email contained the results of the soil samples that he paid to have taken on Silver Creek. Tr. 41. He sent these documents because Doug had requested these results earlier in 2019. Tr. 41, 178. Reed was not reimbursed for the expenses related to procuring these soil samples. Tr. 43, 179. On February 26, 2019, Savich sent Reed the following email:

**On Friday, February 8 I emailed you regarding the Silver Creek Farm lease. In that email, I explained our position with regard to the termination of the lease and that we do not believe that the lease is in effect. I asked you to respond by Friday, February 15 with your intentions with respect to this planting season. You have yet to respond. Let me reiterate our position: You do not have the right to enter the Silver Creek property. You may not prepare the land for planting, plant, or take any other action to move forward with in the usage of that property for the 2019 crop year. Should you have any equipment or personal property left**

**on the Silver Creek property, it must be removed by March 15, 2019. If we have not received a response indicating that you will not be taking actions to move forward with the 2019 crop year on the Silver Creek property by that date, be advised that we intend to file an injunction and will be enforcing our property rights to the fullest extent under the law. \* \* \***

Ex. F.  However, on March 1, 2019, Don sent the following email to Reed:

**I am writing to you to invite you to continue farming the Silver Creek property for the 2019 crop year, and I intend to honor the lease agreement entered into with the Joan Sullinger Life Estate as it is currently written. As we both know, at the end of 2018 you invested significant time, capital, and energy in preparing the property for the 2019 season. The ability to realize a return on this investment is critical, for both you as a tenant and me as an owner of the property. Without showing a history of profitability on the property, the value of that property is diminished and will impact the final sale value.**

**My intentions were further illustrated by cashing the rental check that you sent at the end of 2018. By cashing the check, I acknowledged that the lease was valid after the ending of the Life Estate. I appreciate you remitting the lease payments in a timely manner.**

**Finally with regards to my Brother Doug, by attempting to enforce his interpretation of the lease with regards to termination he and his counsel are denying my right to earn rental income from the property. A clear indication of this is that they have not come forward with anyone willing to rent the property. Furthermore, to my knowledge he and his counsel have not provided you with any plan on reimbursement for the investment you have made into the 2019 season.**

**\* \* \***

**Don J. Sullinger, Sr.**

Ex. C.  On March 25, 2019, Reed tendered the first quarterly payment of the year to Don and Doug by issuing each of them checks for one half of the sum that was due. Tr. 43.  Don negotiated this check and kept the funds, but Doug did not negotiate this check.  Doc. 106.  Reed testified that Doug also did not return this check to him. Tr. 46-47.  *See* Tr. 173, 176-177.

{¶7} On April 9, 2019, the sheriff and Doug's counsel served Reed with a notice that directed the Reeds to leave the Silver Creek premises within three days. Doc. 1, Ex. B.  Tr. 51-52.  Reed testified that this notice came "right at planting season." Tr. 51-52.  On April 16, 2019, Doug filed a complaint that named Don and the Reeds as defendants.  Doc. 1.  Doug raised several claims, including a request for a declaratory judgment that stated the 2017 Lease was no longer in effect.  Doc. 1.

{¶8} On April 20, 2019, Reed sent an email to Savich, stating that he "intend[ed] to exercise [his] * * * right to farm the Silver Creek property as set forth in the rental agreement."  Ex. F.  However, Reed testified that he ultimately did not plant any crops at Silver Creek during the 2019 planting season because of the eviction notice that had been served on him at Doug's direction.  Tr. 51-52.  Doc. 106.

{¶9} On May 10, 2019, Don filed an answer and counterclaims, requesting a partition of Silver Creek and raising a claim for unjust enrichment.  Doc. 14.  On May 29, 2019, the Reeds filed an answer and counterclaim.  Doc. 21.  The Reeds

requested damages for the expenses that they incurred in preparing Silver Creek for the 2019 planting season and for the lost profits that came from being unable to farm Silver Creek in 2019. Doc. 21. On July 29, 2019, Don filed a motion to dismiss Doug's complaint for failure to state a claim upon which relief could be granted. Doc. 16.

{¶10} On February 7, 2020, the trial court granted Don's motion to dismiss the claims raised in Doug's complaint. Doc. 75.[1,2] After this order, only the counterclaims raised by Don and the Reeds remained. Doc. 75. On April 6, 2020, after reaching an agreement to resolve their disputes, Don and Doug filed a joint notice of voluntary dismissal with prejudice under which the parties agreed to dismiss the claims against each other. Doc. 93. At this point, only the counterclaims filed by the Reeds against Doug remained for trial.

{¶11} On May 13, 2020, Doug filed a motion to dismiss the Reeds' counterclaims for failure to state a claim upon which relief could be granted. Doc. 99. Doug argued, in part, that the Reeds had failed to demonstrate a basis on which he could be held liable under the 2017 Lease. Doc. 99. On June 3, 2020, Reed and

---

[1] Doug's claims for forcible entry and detainer, rescission, and a declaratory judgment were rendered moot by the fact that the contested lease expired on December 31, 2019. Doc. 75. The trial court dismissed his slander of title claim for failure of proof; his quiet title claim as his interest in the property was not a contested issue between the parties; and his "duties to joint tenant" claim as no damages were established. Doc. 75.

[2] On March 6, 2020, Doug appealed the trial court's decision to dismiss his amended complaint. *Sullinger v. Sullinger*, 3d Dist. Hardin No. 6-20-06, 2020-Ohio-5225, ¶ 9-10. In this prior appeal, we affirmed the ruling of the trial court in a decision that was released on November 9, 2020. *Id*. at ¶ 42.

Doug both testified at a bench trial. Tr. 1, 19, 167. The trial court also considered arguments regarding Doug's motion to dismiss.[3] Tr. 6.

**{¶12}** On August 24, 2020, the trial court issued its judgment entry. Doc. 106. The trial court found that Don affirmed the 2017 Lease in writing through the March 1, 2019 email; that the Reeds accepted the continuation of the lease by continuing to make the quarterly payments that were due; that Doug "wrongfully prohibited" the Reeds from entering into the Silver Creek premises; that Doug's conduct caused the Reeds to incur damages. Doc. 106.

**{¶13}** The trial court determined that the Reeds had suffered a total of $62,545.91 in damages. Doc. 106. However, Doug was entitled to a total of $19,947.00 in rental payments under the lease agreement. Doc. 106. The trial court offset the total amount of damages that the Reeds incurred by the total amount of rental payments that Doug was due. Thus, the trial court then ordered Doug to pay the Reeds a total of $42,598.91 in damages. Doc. 106.

**{¶14}** Doug filed his notice of appeal on September 21, 2020. Doc. 108. On appeal, he raises the following three assignments of error:

**First Assignment of Error**

**The trial court erred in finding a valid lease agreement, enforceable against the Appellant, where no contractual privity existed to bind the Appellant without his assent or authorization to the contract.**

---

[3] At trial, the trial court stated that "[t]he motion [to dismiss] is really a motion in summary judgment" and that it would hear the relevant arguments "as part of the case and rule on it all at once." Tr. 6.

**Second Assignment of Error**

**The trial court erred in finding that Appellant was a third-party beneficiary under a renewed lease agreement between Don J. Sullinger and Appellees and imposing contractual obligations pursuant thereto.**

**Third Assignment of Error**

**The trial court erred in denying Appellant's Motion to Dismiss for failure to state a claim upon which relief could be granted as Appellees could prove no set of facts to support a breach of contract claim entitling them to relief and where Appellees failed to join all necessary parties, despite numerous opportunities to do so, thereby preventing full adjudication of the claims at trial.**

*First Assignment of Error*

{¶15} Doug makes three arguments under this assignment of error. He asserts (1) that the trial court erred by relying on inadmissible hearsay in reaching its decision; (2) that the 2017 Lease was unenforceable against Joan's heirs; and (3) that a tenant in common cannot contractually obligate a cotenant without that cotenant's authorization or acceptance. We will consider each of these arguments in three separate analyses.

Legal Standard for the First Argument

{¶16} In general, "[t]he decision to admit or exclude evidence rests in the trial court's sound discretion and we will not reverse its decision absent an abuse of that discretion." *Brown v. Brown*, 2017-Ohio-8938, 102 N.E.3d 72, ¶ 46 (3d Dist.). However, if "[a] party[] fail[s] "to object to the receipt or use of evidence when the alleged error could be remedied," then that party "waives * * * [the] right to address

that issue on appeal." *Cunningham v. Goodyear Tire & Rubber Co.*, 104 Ohio App.3d 385, 662 N.E.2d 73 (9th Dist. 1995). *See Wall v. McMillan*, 3d Dist. Shelby No. 17-01-11, 2002-Ohio-1022, 2002 WL 358464, *5 (Mar. 5, 2002) (holding that "the failure to object to the admission of evidence generally waives the right to assign error on appeal").

Legal Analysis for the First Argument

{¶17} On appeal, Doug argues that the trial court erred in admitting an email ("Exhibit C") that was sent from Don to Reed on March 1, 2019 into evidence. At the bench trial in this case, Reed was asked to identify Exhibit C. Tr. 43. Before Reed had identified Exhibit C, Doug objected. Tr. 43. In response, the trial court stated the following:

> **We're not talking about admitting evidence, we're just simply identifying the evidence. You'll get a chance when they move—if they move admission, that's when I think your objection at that point would be more appropriate. So I'll overrule at this time. You [Reed] can go ahead and identify it and then you all fight over these things when they're moved into admission, if they are.**

Tr. 44. After Doug and Reed had testified, the trial court asked the parties to offer their exhibits for admission into evidence. Tr. 155. At this time, the following exchange occurred:

> **[Trial Court]: Mr. Clarke [Doug's counsel], A is being offered.**
>
> **Mr. Clarke: No objection.**
>
> **(Reed Exhibit A admitted.)**

-10-

**[Trial Court]:  All right.  B is being offered.**

**Mr. Clarke:  No objection.**

> **(Reed Exhibit B admitted.)**

**[Trial Court]:  All right.  C?**

**Mr. Clarke:  *No objection*.**

> **(Reed Exhibit C admitted.)**

**[Trial Court]:  D?**

**Mr. Clarke:  Objection.  Hearsay.**

(Emphasis added.)  Tr. 155-156.  Thus, Doug did not raise an objection when Exhibit C was offered for admission into evidence, though he did raise objections to three other exhibits that were subsequently offered by the Reeds.  Tr. 156-158.

{¶18} In *Genesis Respiratory Services, Inc. v. Hall*, the Fourth District Court of Appeals considered a factually similar situation.  *Genesis Respiratory Services, Inc. v. Hall*, 99 Ohio App.3d 23, 30-31, 649 N.E.2d 1266 (4th Dist. 1994).  On appeal, appellant challenged the admission of "Exhibit Six," alleging that it contained inadmissible hearsay.  *Id*. at 30.  The Fourth District noted that, while "appellant raised a hearsay objection to the testimony regarding the exhibit, appellant failed to object to the admission of the exhibit itself."  *Id*.  In fact, when Exhibit Six was offered for admission into evidence, appellant said, "I have no objection to [Exhibits] 35, 6, and 7."  *Id*. at 31.  The Fourth District concluded that

-11-

"[b]y failing to object to the admission of the exhibit at trial, appellant waived any error concerning the admission of the exhibit." *Id.*

{¶19} Turning to the facts of the case before us, the trial court expressly directed Doug to raise any objections that he had regarding the admissibility of Exhibit C when it was being offered for admission into evidence. Tr. 44. At the end of this bench trial, the trial court asked Doug whether he had any objections to each of the exhibits offered by Reed. Tr. 155-158. Doug ultimately chose not to object to Exhibit C when the opportunity to challenge its admissibility arose. Tr. 155-156. In fact, he expressly stated that he had "no objection" to Exhibit C. Tr. 156.

{¶20} Since Doug did not object to the admission of Exhibit C before the trial court, he has waived this issue on appeal. *See Amerifirst Savings Bank of Xenia v. Krug*, 136 Ohio App.3d 468, 482, 737 N.E.2d 68, 77 (2d Dist. 1999); *Van Scyoc v. Huba*, 9th Dist. Summit No. 22637, 2005-Ohio-6322, ¶ 18-19; *Merriman v. Merriman*, 11th Dist. Portage Nos. 2003-P-0030, 2003-P-0076, 2004-Ohio-3511, ¶ 30. As such, Doug's first argument under this assignment of error is without merit.

Legal Standard for the Second Argument

{¶21} A life estate is "an estate held only for the duration of a specified person's life." Black's Law Dictionary (11th ed. 2019). This person—the life tenant—is, "until death, * * * beneficially entitled to [the] property" subject to the life estate. *Id.* "A person possessing a life estate in specified property can lease the

property to someone else for the duration of the life estate." *Durben v. Malek*, 5th Dist. Tuscarawas No. 2013 AP 08 0032, 2014-Ohio-2611, ¶ 66. However, "[l]eases given by the life tenant expire on the death of the original measuring life." *Fruth v. Shultz*, 6th Dist. Wood No. WD-94-052, 1995 WL 283891, *3 (May 12, 1995), quoting 2 Powell on Real Property (1994), 15-57, 15-58, Paragraph 203[3].

{¶22} For these reasons, on the death of a lessor-life tenant, "a lease made by the life tenant ordinarily terminates even though the stated term for which it was made has not expired, and, as to the remainderman, the lease becomes void." 31 Corpus Juris Secundum, Estates, Section 65 (2021).

> **[T]he lessee may not be entitled to any rights under the lease unless there is a ratification of the lease by the remainderman, and the ratification may be required to be in writing. It is not necessary that the ratification be indorsed on the lease itself, and any writing denoting recognition and approval amounts to ratification.**

*Id*. Further, "[t]he acceptance of rent from the lessee by the remainderman after the life tenant dies does not itself ratify or adopt the lease * * *." *Id*.

Legal Analysis for the Second Argument

{¶23} In this case, the 2017 Lease between Joan and the Reeds contained the following provision:

> **The term of said lease is a continuing contract based upon the life of Joan A. Sullinger starting with crop year 2017. The lease terminates on December 31 of the then current crop year that Joan A. Sullinger passes away prior to July 1st of that year. Or, the lease terminates on December 31 of the following year that**

> **Joan A. Sullinger passes away after June 30th of the then current crop year.  * * ***

Ex. A.  Under the strict wording of this provision, the 2017 Lease was set to expire on December 31, 2019 since Joan passed away on November 28, 2018.  Tr. 169.

**{¶24}** But while the language of the 2017 Lease provided for the continuation of this agreement beyond Joan's life, she only had a life estate in Silver Creek.  Tr. 168.  "Leases given by the life tenant expire on the death of the original measuring life."  *Fruth, supra*, at *3.  *See* 31 Corpus Juris Secundum, Estates, Section 51, at 101 (1996) ("The general rule [is] that a life tenant cannot create by lease any term that will outlast his own estate * * *.").  Nonetheless, the Reeds, as lessees, could still have rights under the 2017 Lease *if* "there [was] a ratification of the lease by the remainderman * * *."  31 Corpus Juris Secundum, Estates, Section 65 (2021).

**{¶25}** In this case, Don, as a remainderman of Joan's life estate, expressly ratified the terms of the 2017 Lease in an email he sent to Reed on March 1, 2019.  Ex. C.  This email reads as follows:

> **I am writing to you to invite you to continue farming the Silver Creek property for the 2019 crop year, and I intend to honor the lease agreement entered into with the Joan Sullinger Life Estate as it is currently written.  As we both know, at the end of 2018 you invested significant time, capital, and energy in preparing the property for the 2019 season.  The ability to realize a return on this investment is critical, for both you as a tenant and me as an owner of the property.  Without showing a history of profitability on the property, the value of that property is diminished and will impact the final sale value.**

**My intentions were further illustrated by cashing the rental check that you sent at the end of 2018. By cashing the check, I acknowledged that the lease was valid after the ending of the Life Estate. I appreciate you remitting the lease payments in a timely manner.**

**\* \* \***

**Don J. Sullinger, Sr.**

Ex. C. Thus, Don did more than accept rental payments from the Reeds. 31 Corpus Juris Secundum, Estates, Section 65 (2021). He issued Reed a "writing [that] denot[ed] recognition and approval" of the 2017 Lease. *Id.* In response to this email, Reed continued to fulfill his obligations under the 2017 Lease by tendering all four of the quarterly payments that were due in 2019 to Don. Doc. 106.

{¶26} In conclusion, even though Joan's death had terminated her life estate in the Silver Creek property, the Reeds still had rights under the 2017 Lease agreement because Don, as a remainderman, ratified the terms of the 2017 Lease. Contrary to Doug's argument, the 2017 Lease was an enforceable agreement. For these reasons, Doug's second argument under this assignment of error is without merit.

Legal Standard for the Third Argument

{¶27} "A tenancy in common is a joint interest in property" in which the cotenants have "a unity or right of possession." *Koster v. Boudreaux*, 11 Ohio App.3d 1, 5, 463 N.E.2d 39, 43 (6th Dist. 1982). In this arrangement, "[t]enants in

common hold * * * distinct titles, with unity of possession." 86 Corpus Juris Secundum, Tenants in Common, Section 3, at 261 (1997). Because cotenants have distinct titles, "one cotenant cannot convey away the interest of another cotenant." *Lewellyn v. Village of South Zanesville*, 43 Ohio App. 385, 390, 183 N.E. 306, 308 (5th Dist. 1932). However, since

> **'[e]ach tenant in common has a separate and distinct title, and * * * holds this title independently of the other cotenants,' * * * '[e]ach cotenant's interest can be transferred, devised or encumbered separately and without the consent of the other cotenants.'**

*Marks v. Aurora Bd. of Zoning Appeals*, 2016-Ohio-5183, 69 N.E.3d 216, ¶ 42 (11th Dist.), quoting *Koster*, at 5.

{¶28} While cotenants have distinct titles, "each tenant in common is equally entitled to the use, benefit, and possession of the common property * * *." 86 Corpus Juris Secundum, Tenancy in Common, Section 17, at 278 (1997).

> **A tenant in common has an interest in the possession of every part of the common property and has the right to occupy the whole of the property and every part thereof, but is not entitled to exclusive possession of the whole or of any particular part, as against the other cotenants, except by agreement with them.**

*Id.*, Section 22, at 281.

> **Any co-owner of real property has a right to enter upon the common estates and take possession of the property, subject to the right of his co-tenants to take possession. Further, one * * * [co-] tenant cannot recover sole possession from another co-tenant, but can only share possession.**

*Collins v. Jackson*, 34 Ohio App.3d 101, 103, 517 N.E.2d 269, 271 (8th Dist. 1986).

{¶29} "[T]he law * * * presume[s] that the possession of some cotenants is the possession of all." *Ferenbaugh v. Ferenbaugh*, 104 Ohio St. 556, 559-560, 136 N.E. 213, 214-215 (1922). Thus, one cotenant cannot dispossess another cotenant of the common property, and a cotenant in possession of the property is not subject to eviction by another cotenant. *Collins* at *103. However, "a tenant in common * * * who * * * has sole possession of the premises, is liable to account to his cotenants for their share of the reasonable rental value of such occupancy, possession and use." *Cohen v. Cohen*, 157 Ohio St. 503, 106 N.E.2d 77 (1952), at the syllabus. Accordingly, a tenant in common may "recover * * * his share of rents and profits * * *" from a cotenant. R.C. 5307.21.

{¶30} Since each cotenant is "equally entitled to the use, benefit, and possession of the common property, and may exercise acts of ownership" over the common property, a cotenant generally "may authorize a third person to do whatever the [co]tenant could have done." 86 Corpus Juris Secundum, Tenancy in Common, Section 17, at 278 (1997). "A tenant in common may properly bind himself and his own interests in the common property * * *." *Id*., Section 124, at 382.

> **But it is fundamental that a tenant in common cannot convey or incumber [sic] the interest of his cotenant, nor by any act of his divest his interest as cotenant in the entire tract, or defeat, defer or limit his rights as a tenant in common, and any attempt to do so is ineffectual.**

*Heiden v. Howes*, 77 Ohio App. 525, 531, 67 N.E.2d 641, 644 (1st Dist. 1945), quoting *Lauer v. Green*, 99 Ohio St. 20, 25, 121 N.E. 821, 823 (1918).

**{¶31}** However, a tenant in common may still lease his or her undivided interest in the common property because, "when an owner conveys a leasehold estate[,] the owner retains his fee simple interest in the property." *Broerman v. Blanke*, 3d Dist. Auglaize No. 2-98-30, 1999 WL 280288, *2 (Apr. 23, 1999). Further,

> **[w]hen an owner of real property conveys a leasehold interest in that property, he conveys to the lessee his right to possess the property, and the possession of the lessee is the possession of the lessor. That is, during the lease term, the lessee possesses the property for the lessor.**

*H & H Farms, Inc. v. Huddle*, N.D. Ohio No. 3:13 CV 371, 2013 WL 2251762, *5 (May 22, 2013). Thus, "Ohio law holds that a lease does not divest cotenants of their interests in property." *Id*. at *4.

**{¶32}** As such, a tenant in common may "convey a leasehold interest transferring his right to physically possess" the common property without divesting any other cotenant of their interests. *H & H Farms*, at *6.

> **Ordinarily one tenant in common may by * * * lease * * *, confer on another person the right to occupy and use the property of the cotenancy as fully as the lessor * * * might have used or occupied it, if the lease * * * had not been granted.**

86 Corpus Juris Secundum, Tenancy in Common, Section 130, at 385-386 (1997). Further, a tenant in common may convey such a lease of his or her undivided interest

-18-

in the common property without obtaining the consent of any other cotenant. *H & H Farms, supra*, at *4-5; 86 Corpus Juris Secundum, Tenancy in Common, Section 130, 134, at 385-386, 390 (1997) ("A tenant in common may, without the authority of his or her cotenants, let his own share of the common property * * *.").

{¶33} In a situation where a tenant in common has leased his or her undivided share in a tenancy in common without the assent or authorization of any other cotenant, the following is the general rule that applies to the non-leasing cotenants:

> **[o]rdinarily a tenant in common who has not assented to a lease by his or her cotenant is entitled to share possession with his cotenant's lessee, but he is not entitled to oust such lessee and take sole possession * * *. A nonleasing tenant in common who does not himself wish to cultivate the property may not prevent his cotenant's lessee from doing so * * *.**

86 Corpus Juris Secundum, Tenancy in Common, Section 132, at 388 (1997). *See H & H Farms, supra*, at *2, 5 (holding that "a cotenant who takes possession is not subject to eviction" and that "possession of the lessee is the possession of the lessor[-tenant in common]").

Legal Analysis for the Third Argument

{¶34} On appeal, Doug asserts that he could not be held liable in this case because he was not a party to the lease agreement between Don and the Reeds. Doug argues that to hold him liable under this lease agreement would be to hold that Don could bind him contractually without his authorization. The general rule is

"that one tenant in common cannot bind his cotenant to a contract if the contract is made without the cotenant's authority * * *." *H & H Farms, supra*, at *5.

{¶35} However, while Don could not bind Doug contractually, Don could bind himself contractually and convey his rights to possess Silver Creek to the Reeds. *H & H Farms, supra*, at *6; 86 Corpus Juris Secundum, Tenancy in Common, Section 130, at 385 (1997). The primary issue in this case is not whether Don, as a tenant in common, could bind Doug contractually but whether Doug had the right, as a tenant in common, to prevent the Reeds from exercising the rights that Don had conveyed to them. We turn now to examining the legal basis of the liability that the trial court imposed on Doug.

{¶36} In this case, Don and Doug were tenants in common who each had an equal, undivided interest in Silver Creek. Doc. 30, Ex. 2. Doc. 37. Tr. 183. As such, each of them "ha[d] a right to enter upon the common estate[] and take possession of the property * * *." *H & H Farms, supra*, at *4-5. As a tenant in common with an undivided interest in Silver Creek, Don "ha[d] the right to occupy the whole of the property * * *." 86 Corpus Juris Secundum, Tenancy in Common, Section 22, at 281 (1997). Since Don had the right to "occupy the whole of the property," he could convey his right to "occupy the whole of the property" to a third party through a lease agreement. *Id.*, Section 22, at 281. *See Id.*, Section 130, at 385-386; *H & H Farms, supra*, at *4-5.

{¶37} For this reason, Don had the authority, in this case, to convey *his* rights to enter, possess, and cultivate his undivided interest in Silver Creek to the Reeds through a lease agreement by ratifying the 2017 Lease. *H & H Farms, supra*, at *4. *See* Ex. A, C. Further, Don had the authority to convey *his* rights to the Reeds through a lease agreement without Doug's authorization. *H & H Farms, supra,* at *5-6 ("Ohio law permits one cotenant to lease his interest to a third party without his cotenant's agreement."), citing *Cahen v. Cahen*, 2d Dist. Franklin No. 3115, 1940 WL 7483, *3 (Feb. 21, 1940); 86 Corpus Juris Secundum, Tenancy in Common, Section 130, 134, at 385-386, 390 (1997).

{¶38} After Don expressly ratified the 2017 Lease, the Reeds' possession of Silver Creek would have been "equal to" Don's possession of Silver Creek because "a tenant's possession of property is the landlord's possession of the property * * *." *H & H Farms, supra*, at *4, citing *Broerman, supra*, at *3. As such, Doug could take no action against the lessees that he could not take against the lessor. 86 Corpus Juris Secundum, Tenancy in Common, Section 134, at 390 (1997) (When a tenant in common leases an undivided interest, the "lessees on entry will have the same right with respect to the other cotenants as the lessor had."). Because "a cotenant who takes possession is not subject to eviction * * *," the Reeds, as lessees, were also not, as a general matter, subject to eviction for simply exercising the rights of possession given to them by Don. *H & H Farms, supra*, at *2.

{¶39} However, Doug chose to take steps to evict the Reeds from Silver Creek and to prevent them from exercising their rights under the lease agreement with Don. On February 26, 2019, Doug's counsel sent the following email to Reed:

> **You do not have the right to enter the Silver Creek property. You may not prepare the land for planting, plant, or take any other action to move forward with in the usage of that property for the 2019 crop year. Should you have any equipment or personal property left on the Silver Creek property, it must be removed by March 15, 2019. If we have not received a response indicating that you will not be taking actions to move forward with the 2019 crop year on the Silver Creek property by that date, be advised that we intend to file an injunction and will be enforcing our property rights to the fullest extent under the law.**

Ex. F. Tr. 51. Then Doug had his counsel and a sheriff's deputy serve Reed with a notice of eviction on April 9, 2019. Tr. 51-52, 179. Finally, Doug filed the complaint that initiated the instant action because he was "seek[ing] to evict" the Reeds. Doc. 1. *See* Tr. 180. Reed testified that he, in response to these actions, did not plant crops on Silver Creek in 2019. Tr. 51-52.

{¶40} In general, Doug, as a cotenant out of possession, would have to demonstrate that another cotenant made "an assertion of ownership to the exclusion of the cotenant out of possession" to establish a violation of his interests because "[t]he law presumes the possession of some cotenants is the possession of all." *H & H Farms, supra*, at *5, citing *Ferenbaugh, supra,* at 559. But there is no indication in the record that such a situation existed in this case.

{¶41} But as a tenant in common, Don could convey the rights to enter, possess, and cultivate Silver Creek to the Reeds through a lease agreement without affecting Doug's title to the common property. *Broerman, supra*, at *2; *H & H Farms, supra*, at *4-5. Further, the record contains no evidence that Doug wanted to physically possess or cultivate Silver Creek. *See H & H Farms, supra,* at *3; 86 Corpus Juris Secundum, Tenancy in Common, Section 132, at 388 (1997) ("A nonleasing tenant in common who does not himself wish to cultivate the property may not prevent his cotenant's lessee from doing so * * *."). Thus, the lease agreement between Don and the Reeds was in no way "contrary to [Doug's] * * * ownership interest" in Silver Creek. *H & H Farm, Inc., supra*, at *3.

{¶42} Further, Doug, as "[a] cotenant out of possession[, was] entitled to receive his share of the reasonable rental value of the property exclusively used by the cotenant in possession * * *."[4] *H & H Farms, supra*, at *3. In this case, the lease agreement required Reed to pay rent. Ex. A, C. Reed tendered the four quarterly rental payments that were due under the lease agreement in 2019 to Don, who accepted each of these checks. Doc. 106. However, Doug refused to negotiate the rental payment that Reed tendered to him. Tr. 46-47, 173, 176-177. Thus, Doug

---

[4] In *H & H Farms*, the court noted that the word "possession" in this context does not exclusively refer to "physical possession" because "[a]n estate which gives the right to possess or to a participation in the fruits of possession is sufficient." *H & H Farms, supra*, at fn. 1, quoting *Rawson v. Brown*, 104 Ohio St. 537, 546, 136 N.E. 209 (1922). "Thus, someone retains legal possession of land so long as he is 'entitled to enjoy the present rents * * * as one of the cotenants.'" *H & H Farms, supra*, at fn. 1, quoting *Rawson* at 546-547.

cannot argue that Reed or Don withheld "his share of the reasonable rental value of the property." *H & H Farms, supra*, at \*3.

**{¶43}** After examining the facts of this case, the trial court stated the following conclusion in its judgment entry:

> **Doug Sullinger had a right as a tenant in common to evict anyone who entered on the property without legal right, color of title or permission. But he did not have the right to prohibit persons in legal possession from entering upon the land. The Reeds were properly in legal possession under the terms of the lease, and therefore were wrongfully prohibited from access to the property.**

Doc. 106. The trial court then found Doug liable for the profits that the Reeds lost because they were prevented from cultivating Silver Creek in 2019. Doc. 106.

**{¶44}** Having reviewed the record, we cannot conclude that the trial court erred in holding Doug liable in this case. Don, as a tenant in common, conveyed the rights to enter, possess, and cultivate Silver Creek to the Reeds through a lease agreement. As lessees, the Reeds stood in the place of the lessor-tenant in common. In this case, Doug undertook actions against the lessees that he could not have undertaken against the lessor. The record contains no apparent legal basis for Doug's decision to exclude the Reeds from Silver Creek and to deny them the opportunity to exercise the rights conferred upon them by Don.

**{¶45}** In conclusion, the fact that Don did not have the authority to bind Doug contractually is irrelevant to the disposition of this case. Don had the authority to confer rights to Silver Creek on the Reeds by a lease agreement. Doug did not have

the authority to exclude them from Silver Creek. At trial, the Reeds established that Doug's decision to prevent them from exercising their legal rights caused them to lose profits. Ex. G-S. Doc. 106. Because Doug did not have a legal justification to so act, the trial court did not err in holding him liable for these lost profits. For these reasons, Doug's third argument herein is without merit, and his first assignment of error is overruled.

*Second Assignment of Error*

{¶46} Doug argues that the trial court incorrectly imposed contractual liability on him because he was a third-party beneficiary to the lease agreement between Don and the Reeds.

Legal Standard

{¶47} "A third party beneficiary is one for whose benefit a promise has been made in a contract but who is not a party to the contract." *Maghie & Savage, Inc. v. P.J. Dick Inc.*, 10th Dist. Franklin No. 08APP-487, 2009-Ohio-2164, ¶ 40, quoting *Chitlik v. Allstate Ins. Co.*, 34 Ohio App.2d 193, 196, 299 N.E.2d 295 (8th Dist. 1973). "[M]ere status as a beneficiary does not bind a party to perform contractual duties." *Jankovsky v. Grana-Morris*, 2d Dist. Miami No. 2000-CA-62, 2001 WL 1018337, * (Sept. 7, 2001), citing *Tractor-Trailer Supply Co. v. NCR Corp.*, 873 S.W.2d 627, 629 (Mo.App. 1994).

Legal Analysis

**{¶48}** Doug argues that he was not a party to the lease agreement between Don and the Reeds and that the trial court imposed contractual liability on him by finding him to be a third-party beneficiary of the agreement. To support this argument, Doug points to the fact that the trial court referred to him as a third-party beneficiary in its judgment entry. This relevant statements reads as follows:

> **Doug Sullinger, as co-tenant in common, became a third-party beneficiary of the lease agreement between Don Sullinger, Sr. and the Reeds, and was thereby entitled to the $19,947.00 lease payment for the year. * * ***

Doc. 106. The trial court then found that Doug "caused the breach of the contract by his conduct *as a co-tenant in common* effectively evicting the Reeds from the property." (Emphasis added.) Doc. 106.

**{¶49}** However, the trial court did not impose contractual liability on Doug because he was a third-party beneficiary of the lease agreement. The trial court found him to be a third-party beneficiary in the process of calculating damages. Doc. 106. As a third-party beneficiary, Doug was entitled to $19,947.00 in rental payments under the lease agreement. Doc. 106. As such, the trial court reduced the $62,545.91 the Reeds proved in damages by the $19,947.00 that Doug was entitled to as a third-party beneficiary of the lease agreement. Thus, the trial court found Doug was a third-party beneficiary not to impose liability but to reduce his liability.

{¶50} Ultimately, Doug uses this argument to again assert that he could not be held liable in this case because he was not a party to the lease agreement between Don and the Reeds. But as we noted in the first assignment of error, Doug did not need to enter into the lease agreement to be held liable for the damages caused by "wrongfully prohibiting" the Reeds from entering and cultivating Silver Creek. Doc. 106. For these stated reasons, Doug's second assignment of error is overruled.

*Third Assignment of Error*

{¶51} Doug argues that the trial court erred in failing to grant his motion to dismiss for failure to state a claim upon which relief could be granted.

Legal Standard

{¶52} Appellate courts are to "decide each assignment of error" raised on appeal "unless an assignment of error is made moot by a ruling on another assignment of error * * *." App.R. 12(A)(1)(c). An issue is moot when it "involve[s] no actual genuine, live controversy, the decision of which can definitely affect existing legal relations." *Culver v. City of Warren*, 84 Ohio App. 373, 83 N.E.2d 82 (7th Dist. 1948), quoting Borchard, *Declaratory Judgments*, at 35 (2d Ed. 1941). "Put differently, an assignment of error is moot when an appellant presents issues that are no longer live as a result of some other decision rendered by the appellate court." *State v. Gideon*, --- Ohio St.3d ---, 2020-Ohio-6961, --- N.E.3d ---, ¶ 26.

Legal Analysis

**{¶53}** Doug argues that the Reeds failed to state a claim on which relief could be granted because they could not establish that he was a party to the lease agreement. Thus, he asserts the trial court did not have legal grounds to hold him liable in this case and that the trial court should have instead granted his motion to dismiss. However, under the first assignment of error, we have already concluded that there were legal grounds for the trial court to hold Doug liable in this case. Reaching this conclusion in the first assignment of error has rendered the issues raised in this assignment of error moot. As such, we decline to address the issues raised in Doug's third assignment of error pursuant to App.R. 12(A)(1)(c).

*Conclusion*

**{¶54}** Having found no error prejudicial to the appellant in the particulars assigned and argued, the judgment of Hardin County Court of Common Pleas is affirmed.

***Judgment Affirmed***

**ZIMMERMAN and MILLER, J.J., concur.**

**/hls**