[Cite as *Sammon v. Leneghan*, 2025-Ohio-965.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

EILEEN SAMMON,                    :

    Plaintiff-Appellee,          :

                     No. 113886

    v.                           :

BRYAN LENEGHAN,                   :

    Defendant-Appellant.         :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** March 20, 2025

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-22-960581

---

### *Appearances:*

Thrasher Dinsmore & Dolan, LPA, Leo M. Spellacy, Jr.,
Elizabeth Collins, Samuel T. O'Leary, Ezio A. Listati, and
Bridey Matheney, *for appellee*.

Seeley, Savidge, Ebert & Gourash Co., LPA, Jeffrey S.
Moeller, and Amelia J. Leonard, *for appellant*.

MARY J. BOYLE, J.:

{¶ 1} Defendant-appellant Bryan Leneghan ("Bryan") appeals the decision of the trial court declaring that "neither plaintiff[-appellee], Eileen Sammon ['Eileen'] nor Doona [Enterprises, LLC ('Doona')] is liable, under Doona's

Operating Agreement [OA] or applicable provisions of Ohio law, to reimburse Bryan and/or Bart Leneghan ['Bart'][1] for their payments toward the tax liens resulting from, or made with the proceeds of, [Bryan]'s sale of 812 College Avenue." (Order, Apr. 2, 2024.)  Upon review, we affirm.

## I.  Facts and Procedural History

{¶ 2}  In 2004, Doona, a limited-liability company, was formed by Bryan's uncle, Peter Leneghan ("Peter").  Peter was the sole member.  In 2008, Peter, through Doona, opened Stone Mad Pub Restaurant and Bocce ("the Pub") located at 1306 W. 65th Street in Cleveland, Ohio.  Thereafter, Peter and Doona began acquiring and managing additional properties in the vicinity of the Pub.  Eileen, who was a dear friend of Peter's according to his will, was employed by Doona and worked closely with Peter managing the Pub's day-to-day operations, managing Doona's financial accounts, records, and properties.

{¶ 3}  In October 2016, Peter became ill and ultimately passed away in May 2020.  Peter's estate was admitted into probate on July 31, 2020.[2]  Through his Last Will and Testament, Peter appointed Bart Leneghan ("Bart"), his brother, as the executor of his estate.  Bart is Bryan's father.  Peter's Will bequeathed his sole

---

[1] Bart Leneghan is not a party to this action.

[2] The estate was initially closed on Aug. 31, 2021.  It was reopened in Nov. 2023 and finally closed on Sept. 26, 2024.  *The Estate of Peter P. Leneghan*, Cuyahoga C.P. No. 2020EST253382 (Sept. 26, 2024).

ownership of Doona to his nephew Bryan and his friend Eileen. He bequeathed a 51 percent interest to his nephew, and 49 percent interest to Eileen.

{¶ 4} In August 2020, Bryan and Eileen executed the Doona Operating Agreement ("OA"). According to Eileen, her role in the day-to-day operations of Doona changed little; however, pursuant to the OA Bryan became responsible for the preparation and filing of Doona's tax matters.

{¶ 5} Peter's Will also disposed of his various Cleveland property holdings, leaving five to Doona, including: 1309 W. 65th Street, 1311 W. 65th Street, 1318 W. 65th Street, 1307 W. 65th Street, and 1154 Rowley Avenue. There were, however, properties owned by Peter that were not passed to Doona. Two properties, 1934 St. Clair Avenue and 812 College Avenue, were left to Bryan, personally. Although 812 College Avenue was left to Bryan, it was subject to a life estate that Peter left to Eileen for her apartment located at 812 College Avenue.

{¶ 6} In March 2021, Peter's properties were transferred to Doona and Bryan respectively. Bart testified at deposition that several tax liens totaling $283,458.30 encumbered Doona, as well as the properties at the time of transfer. Bart testified that because there was an interested buyer, he sold 812 College Avenue first.[3] Bryan agreed to the sale of this property. Eileen also agreed to the sale of this property and contemporaneously to relinquish her life estate in her apartment without compensation. She testified during her deposition that it was

---

[3] Peter secured the buyer for 812 College Avenue prior to his death, but passed away before the sale was completed.

her understanding that by giving up her life estate, the tax liens related to Doona would be released, allowing Eileen to benefit from her 49 percent interest in Doona. Eileen also testified that she understood from conversations with Peter before his death that his intention was to sell 812 College Avenue for the purpose of paying off all debts associated with tax liens on Doona's properties, so that Doona could resume operations without the concern of the tax liens interfering with the business's operations.

{¶ 7} Bart testified at deposition that he negotiated with the tax authorities to pay off many of the liens associated with both Doona and Peter personally, so 812 College Avenue could be sold without encumbrances. According to Bart, in order to do this he took out a home-equity loan on his residence, paying $100,000 to the Treasurer of the State of Ohio for tax liens.

{¶ 8} In April 2021, 812 College Avenue was sold for $600,000. After paying off the mortgage, the tax liens, and miscellaneous costs associated with the sale, Bryan received approximately $243,000 in proceeds. Bryan testified at deposition that he reimbursed his father $100,000. Eileen received no proceeds from the sale of 812 College Avenue. Nor was she compensated for surrendering her life estate, yet some of the tax liens associated with Doona were not fully satisfied.

{¶ 9} After the sale of 812 College Avenue, Eileen and Bryan's relationship deteriorated due to conflicts over the operation of the Pub and Doona's unpaid tax liens. In late February 2022, Bryan sent a letter to Eileen stating "that he was

removing her from all management and operations of the Pub, removing her access to Doona's bank accounts and records, stopping any payments to Eileen from Doona, and threatening to call the police if she were to show up at the Pub, among other adverse actions." (Order, Apr. 2, 2024.)

{¶ 10} On March 11, 2022, Eileen filed her verified complaint against Bryan and Doona alleging two counts of breach of fiduciary duty, a claim for accounting, a claim for breach of OA, and seeking declaratory judgment. In addition, Eileen filed a motion for temporary restraining order and preliminary- and permanent-injunctive relief alleging she was improperly excluded by Bryan from management operations of Doona. The motion for temporary restraining order was denied after hearing on March 15, 2022.[4]

{¶ 11} On April 12, 2022, Bryan and Doona filed their answer along with three counterclaims including (1) accounting and disgorgement/breach of fiduciary duties and duty of loyalty; (2) conversion; and (3) an action for dissociation.

{¶ 12} On September 5, 2023, the parties filed a joint motion agreeing "that justiciable issues exist regarding the tax lien issue" and that "all necessary parties to resolve the dispute are parties to this litigation," to have the trial court, by way of briefing, determine the last remaining issue, "whether the sale of any [of Doona's] assets should be divided equal with their membership interests [in Doona] as set forth in the [OA] or whether Bryan Leneghan is entitled to a credit for the tax liens

---

[4] The motion for injunctive relief appears to have been held in abeyance as the parties worked towards a resolution, which ultimately ended in the sale and dissolution of Doona.

(the 'Tax-Lien Issue') that were paid off after each party inherited their interest pursuant [to] Peter Lenehan's Last Will and Testament." (Joint motion for order regarding declaratory judgment, Sept. 5, 2023.) The trial court agreed to set a briefing schedule as the parties requested so that "[s]ubsequent to the filing of the parties' briefs, the Court can declare the parties' respective rights regarding the Tax Lien Issue." (Journal entry, Sept. 6, 2023.)

{¶ 13} In Bryan's motion he maintained that Eileen should be responsible for paying 49 percent of the tax liens associated with Doona and Peter personally, by virtue of her ownership stake in Doona, as well as her alleged mismanagement of Doona throughout the years. Bryan claimed that he is entitled to "reimbursement for at least 49% of the $217,140.97 [that] he personally paid to satisfy the tax liens which had accumulated on Pete's and [Doona's] properties." (Defendant Bryan Leneghan's motion for declaratory judgment and partial summary judgment as to the tax liens, Jan. 29, 2024.) This amount included the $100,000 Bryan paid to his father.[5]

{¶ 14} In Eileen's brief, she maintained that under the OA, Peter's Will, R.C. Ch. 1706 (formerly R.C. Ch. 1705), and principles of equity she was not responsible for the $100,000 "loan" from Bart and her contribution to the tax liens was foregoing her life estate in 812 College Avenue without compensation.

_____

[5] It is unclear from the record the amount the tax liens were reduced by Bart's negotiations and to which properties the reduction applied, or what amount remained after the sale of 812 College Avenue.

(Plaintiff's brief in support of declaratory judgment regarding the tax-lien issue, Jan. 29, 2024.)

{¶ 15} Prior to the trial court's ruling on the tax-lien issue, the parties mutually agreed to sell Doona. The sale of Doona took place on March 1, 2024. The trial court ordered that Doona was officially dissolved, subject to the winding-down activities, which were supervised by the court in accordance with R.C. 1706.472(B)(1).

{¶ 16} On April 2, 2024, the trial court issued a ten-page decision and order addressing the tax-lien issue and determined that under applicable Ohio law, neither Doona's OA nor Peter's Will required Eileen (or Doona)[6] to repay Bryan amounts he paid towards the tax liens that encumbered the property he inherited. The next day, the trial court entered a journal entry indicating that its April 2, 2024 order disposed of the remaining issues in the case and the court "retain[ed] jurisdiction." (Journal entry, Apr. 3, 2024.)

{¶ 17} On May 1, 2024, the trial court issued an order allowing the distribution of the confidential amount of proceeds from Doona's sale to Eileen and Bryan. That same day, Bryan, on behalf of Doona and himself, filed this appeal.

## II. Assignments of Error

{¶ 18} Bryan raises the following assignments of error for review:

---

[6] At the trial court, Bryan "argued in passing that he should be seen as a creditor of Doona itself, but that claim is not being pursued in this appeal." (Appellant's brief, p. 8.)

**Assignment of Error I:** The trial court erred by granting summary judgment dismissing [Bryan's] claim for equitable contribution from [Eileen].

**Assignment of Error II:** The trial court erred by examining a claim to equitable contribution by searching for an express contract, "loan agreement," or "understanding" by the advantaged heir. Equitable contribution flows automatically from a disproportionate contribution by one heir to joint obligations.

**Assignment of Error III:** The trial court erred by disregarding the evident material questions of fact as to the propriety and amount of equitable contribution, both of which should have been addressed at an evidentiary hearing.

## III. Standard of Review

{¶ 19} Although Bryan couches his arguments on appeal under summary-judgment language, the parties agreed to have the trial court declare their rights and obligations regarding the Tax-Lien Issue under the OA, Peter's Will, and R.C. Ch. 1706 (formerly R.C. Ch. 1705). The trial court succinctly stated the issue to be decided:

> The parties petition the Court to decide their last remaining dispute, specifically, a determination of the declaratory judgment action to establish the parties' rights and obligations upon Doona's dissolution. The parties disagree as to whether payments made by either [Bryan] or his father, non-party [Bart], toward liens related to both Doona's tax liens and [Peter's] personal tax liens should be repaid by Eileen (or Doona as a creditor) to Bryan. As explained above, [Bryan] inherited 812 College Ave[nue] from [Peter] personally. Doona did not inherit 812 College Avenue upon [Peter's] death.

(Order, Apr. 2, 2024.)

{¶ 20} For purposes of a declaratory-judgment action, a "controversy exists when there is a genuine dispute between parties having adverse legal interests of sufficient immediacy and reality to warrant the issuance of a declaratory

judgment." *Wagner v. Cleveland*, 62 Ohio App.3d 8, 13 (8th Dist. 1988), citing *Burger Brewing Co. v. Liquor Control Comm.,* 34 Ohio St.2d 93 (1973); *Haley v. Bank of Am. Corp.*, 2012-Ohio-4824, ¶ 12 (8th Dist.). The declaratory-judgment statute authorizes a trial court to "declare rights, status, and other legal relations whether or not further relief is or could be claimed." R.C. 2721.02. And "any person interested under a deed, will, written contract, or other writing constituting a contract . . . may have determined any question of construction or validity arising under the instrument, . . . contract, . . . and obtain a declaration of rights, status, or other legal relations under it[,]" pursuant to R.C. 2721.03.

{¶ 21} Since this is a declaratory judgment matter, we apply a de novo standard of review to the trial court's determination of the legal issues in the case. *Amazing Tickets, Inc. v. Cleveland*, 2019-Ohio-1652, ¶ 8 (8th Dist.), citing *Arnott v. Arnott*, 2012-Ohio-3208, ¶ 1. Under a de novo review, we afford no deference to the trial court's decision. *Westlake v. Cleveland*, 2021-Ohio-2929, ¶ 11 (8th Dist.).

## IV. Law and Analysis

{¶ 22} On appeal, Bryan argues that the trial court misapplied the doctrine of equitable contribution finding that Eileen's surrender of her life estate in 812 College Avenue was her contribution to the Tax-Lien Issue. The crux of Bryan's argument is that it is unfair that he paid $217,140.97 towards Peter and Doona's debts out of the proceeds of the sale of 812 College Avenue, that he inherited personally. Bryan contends that he is entitled to have Eileen reimburse him for 49 percent of the $217,140.97, which is $106,399.08.

{¶ 23}According to Bryan, "Ohio has long recognized, in many different factual contexts, the common law doctrine of equitable contribution." (Appellant brief, p. 11.) In support of his argument, he cites *Baltimore & O.R. Co. v. Walker*, 45 Ohio St. 577 (1888), as well as several other cases mostly from the 1800s, arguing that the doctrine of equitable estoppel applies when, in the absence of an agreement to the contrary, one party to a joint obligation contributes to discharge it in an amount disproportionate to his exposure. We note that "[a] cause of action for equitable contribution arises only after one under a legal duty has been compelled to pay more than his or her share of a common burden." *Pa. Gen. Ins. Co. v. Park-Ohio Indus., Inc.*, 2008-Ohio-5991, ¶ 33 (8th Dist.), citing 18 Am.Jur.2d, Contribution § 9 (2004).

{¶ 24}Eileen contends that the trial court's decision should be affirmed because she had no obligation under Peter's Will to reimburse the estate for the tax liens; she never agreed to the "loan" from Bart, which violates Section 2.3 of the OA; and the surrender of her life estate was sufficient to address her share of the tax liens associated with Doona.

{¶ 25}Even if we were to assume for the sake of argument that Peter's Will was silent regarding tax liens, that the parties did not sign an OA, and that all liens were solely attributed to Doona, Bryan completely disregards the value of Eileen's life estate that she surrendered without compensation when 812 College Avenue was sold. The only evidence in the record before us as to the value of the life estate is Eileen's affidavit. A life estate is an estate held for the duration of a specified

person's life. *Sullinger v. Reed*, 2021-Ohio-2872, ¶ 21 (3d Dist.), citing *Black's Law Dictionary* (11th Ed. 2019).

{¶ 26} The evidence in this case demonstrates that Eileen lived at 812 College Avenue in the Tremont neighborhood from 2004 to 2021, in "a fully remodeled unit on the second floor, with two bedrooms, in-suite washer and dryer, vaulted ceilings with skylights, built-in bar and back bar, had a heated garage, and was approximately 1200 square feet." (Eileen's affidavit, plaintiff's brief in support of declaratory judgment regarding the tax-lien issue, exhibit D.) Eileen attested that by giving up her life estate, she was forced to move to another apartment in the Ohio City neighborhood, which is approximately 1100 square feet, and she pays $1,900 per month. She attested that her "residence at 812 College Avenue was more desirable than [her] current apartment." (Eileen's affidavit, plaintiff's brief in support of declaratory judgment regarding the tax-lien issue, exhibit D.) Eileen further attested that she has "managed commercial and residential properties on the westside of Cleveland since 1996" and that due to the resurgence of the Tremont neighborhood in recent years property values and rents in the area of 812 College Avenue have "risen steeply." According to Eileen, the rent for her apartment at 812 College Avenue at that time "would be at least $1,900 per month." At the time of the affidavit, Eileen was 57 years old and "in good health and without any chronic or terminal illness or condition." (Eileen's affidavit, plaintiff's brief in support of declaratory judgment regarding the tax-lien issue, exhibit D.)

{¶ 27} Even if we were to assume that Eileen's apartment at 812 College Avenue would rent for $1,900 per month at the same rate for the next ten years, when computing the value of her life estate, Eileen's contribution would equal $228,000, which far exceeds the $106,399.08 that Bryan contends he is owed.[7]

{¶ 28} Eileen's affidavit was not rebutted.  In reaching our determination that his claim for equitable contribution fails, we need not address the terms of Peter's Will,[8] or the OA,[9] because we conclude that Bryan was more than adequately compensated.

{¶ 29} After reviewing the entire record, this court finds that the trial court's declarations are supported by the undisputed evidence in the record before us. Eileen is not required to reimburse Bryan for the monies he paid towards the tax liens because the surrender of her life estate was sufficient contribution.

{¶ 30} Accordingly, Bryan's three assignments of error are overruled.

{¶ 31} Judgment is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

---

[7] We also note that according to the Center for Disease Control, the average life expectancy for a woman is 80.2 years.  National Center for Health Statistics, *Life Expectancy*, https://www.cdc.gov/nchs/fastats/life-expectancy.htm (accessed Feb. 13, 2025) [https://perma.cc/MY8S-F3V2].

[8] Peter's Will states that "[m]y Executor shall not require any beneficiary under this Will to reimburse my estate for taxes paid on property passing under this Will." (Peter's Will, Plaintiff's Brief, exhibit No. 11.)

[9] Under the terms of the OA, a loan to the company must be in writing and approved by a majority of the members.  (OA Art. 2.3, Plaintiff's brief, exhibit No. 6.)

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY J. BOYLE, JUDGE

EILEEN T. GALLAGHER, P.J., and
EMANUELLA D. GROVES, J., CONCUR